SECURITY PRINTING COMPANY, Respondent, v.
CONNECTICUT FIRE INSURANCE COMPANY
OF HARTFORD, CONNECTICUT, Appellant.

St. Louis Court of Appeals.   Opinion Filed April 4, 1922.

1. **INSURANCE: Fire Insurance: Appraisals: Arbitration: Statute: Does not Apply to Appraisement Clause in Policy.** Section 595, Revised Statutes 1919, providing that any contract or agreement containing any clause or provision providing for "an adjustment by arbitration" shall not preclude any party or beneficiary thereunder from instituting suit or other legal action on such contract at any time, has no application to a stipulation in an insurance policy providing for an appraisal of the loss in case of a disagreement between the parties as to the amount thereof.

2. **————: ————: ————: Appraisement Clause in Policy: Valid.** A stipulation in a fire insurance policy providing for an appraisal of the loss in case of a disagreement between the parties as to the amount thereof before suit, is a valid provision, in the absence of a statute affecting the matter; such provision is not one ousting the courts of jurisdiction, but leaves the general question of liability to be judicially determined, and simply provides a reasonable method of estimating and ascertaining the amount of the loss.

3. **————: ————: ————: ————: Appraisal: Condition Precedent to Suit on Policy.** A stipulation in a fire insurance policy providing that the loss shall not become payable until sixty days after the notice, estimate, and satisfactory proof of loss have been received, including an award by appraisers when an appraisal has been required, and providing further that no action on the policy shall be sustainable until after full compliance by the insured with such requirements, such provisions required compliance by the assured with a stipulation for appraisal, as a condition precedent to his right to maintain an action on the policy.

4. **————: ————: ————: Special Appraisal Agreement: Valid.** Where a fire insurance policy contained a general provision for an appraisal in the event of a disagreement as to a loss, and after the fire the parties entered into a special agreement regarding the appraisal whereby the appraisers were appointed, such special agreement was a practical means of carrying into effect the general pro-

Security Printing Co. v. Conn. Fire Ins. Co.

visions of a policy as to an appraisement, and it was competent for the parties to contract as to the manner in which the policy provision should be carried out, and *held* such special agreement was controlling on the question as to the manner in which the appraisers, or they and the umpire, were required to proceed in making the appraisement.

5. ———: ———: ———: ———: **By Items and in Detail: Appraisement in Bulk does not Comply with Agreement.** Where by the terms of a special agreement entered into subsequent to the fire, appointing appraisers and requiring an appraisal by by items and in detail, and it appeared that the property destroyed or damaged consisted of various classes, an appraisal of the sound value thereof, and loss and damage thereto, consisting merely of the words "basement," "sound value," "loss and damage," etc., giving lump sums, does not constitute an appraisal of the sound value of and loss and damage to the property by items and in detail, in that it was an appraisement in bulk, or in lump, of the sound value of, and the loss and damage to, all of the property contained in such basement taken as a whole and was not a compliance with the provisions of the special agreement.

6. ———: ———: ———: **Failure of Award: Insured Without Fault: Action on Policy Maintainable.** Where an attempt to have an appraisal made in accordance with the terms of a special agreement proved abortive, through no fault on the part of the insured, and if he, in good faith, complies with all the terms of the policy, and is not chargeable with the failure of the appraisers to make a valid appraisal, he is then entitled to maintain an action on the policy.

7. ———: ———: **Pleading: Allegations of Compliance With Conditions of Policy: Sufficiency.** In an action on a fire insurance policy, an allegation in the petition to the effect that plaintiff complied with all the terms and conditions of the policy was sufficient to allege compliance with a provision regarding an appraisal as a condition precedent to plaintiffs right to sue.

8. **APPELLATE PRACTICE: Demurrer to Evidence: Introducing Evidence After Demurrer Overruled: Effect on Appeal.** Even if there was any error in overruling the demurrer to the evidence offered by defendant at the close of plaintiff's case, it is not a matter of which defendant may avail itself in the appellate court, since the evidence as a whole makes it appear that plaintiff complied with the terms of the policy regarding an appraisal, and that the appraisal failed through no fault on his part, as the rule in the trial court on the demurrer to the evidence is to be adjudged on appeal

in the light of all the evidence in the case no matter by whom it may have been offered.

9. INSURANCE: Fire Insurance: Fixing Amount of Partial Loss: Difference in Value Before and After Fire. Under section 6231, Revised Statutes, 1919, the insured, suing for a partial loss under a fire insurance policy, is entitled to recover an amount equal to the damage done to the property; and the damage done to the property is properly ascertainable by proof of the reasonable value thereof immediately prior to the fire and the reasonable value thereof immediately after the fire.

10. EVIDENCE: Exhibits Showing Cost of Type Forms: Witnesses Stating Conclusions as to Loss and Damage: Error. In an action on a fire insurance policy insuring a printing office against fire, it was prejudicial error to permit witnesses to state their conclusion that the inventory which purported to show, not the reasonable value of the property immediately prior to the fire, but the cost in labor and material to replace certain forms, constituted the loss and damage to the property.

11. INSURANCE: Fire Insurance: Policy Provisions: Covering Composition, etc.: Used Forms Worthless Except for Material: Not Entitled to Recover Full Cost. A provision in a fire insurance policy insuring the contents of a printing office against fire covering composition, standing forms, etc., did not entitle insured to recover the cost of composition to restore type forms that, before the fire, were worthless, except for the material therein, but merely meant the cost of composition was intended to be covered when such cost was an element entering into the determination of the value of the property at the time of the loss.

Appeal from the Circuit Court of the City of St. Louis.—
Hon. *Frank Landwehr*, Judge.

REVISED AND REMANDED.

*Leahy & Saunders* and *David W. Voyles* for appellant.

(1) The agreement for appraisement entered into after the fire, appointing the appraisers, was a practical carrying into effect of the stipulations of the policy. It was not a submission to arbitration in the legal sense,

MARCH TERM, 1922.                    425

Security Printing Co. v. Conn. Fire Ins. Co.

but a just and reasonable mode of fixing the value of the injured goods before and after the fire. The persons selected acted as appraisers, and not as arbitrators. Dworkin et al. v. Caledonian Insurance Co., 226 S. W. 846; Zallee v. The Laclede Mutual Fire and Marine Insurance Co., 44 Mo. 530. (2) The appraisers were free to act on their own opinion, without the help of evidence; and nothing more was intended than that an estimate, according to the opinion of the two appraisers, and of the umpire, if they differed, should be reached. Dwookin et al. v. Caledonian Ins. Co., supra. (3) Such an appraisement, when not fraudulently procured, is binding as to the amount. Authorities, Points 1 and 2, supra; Young v. Penn. Fire Ins. Co., 269 Mo. 15. (4) The previous ruling of this court in the Westchester case, which case involved the same finding of appraisers, though not the same evidence, nor the same issues under the pleadings, was in accordance with the foregoing authorities, to the extent that said agreement for appraisement was held to be neither an award under the statute or at common law. Therein, this court held that a substantial compliance only was required. Security Printing Company v. Westchester Fire Ins. Co., 221 S. W. 430. (5) The decision of this court, in the Westchester case, that the appraisement was not based upon the policy contract, but upon the subsequent agreement entered in to on April 29, 1914, is overruled by the subsequent decision of the Supreme Court in the Dworkin case, which overruled the Young case, which this court followed in the Westchester case. (6) In this case the question is, under the issues raised by the pleadings, whether the work of said appraisers, admittedly unimpeached on account of any alleged fraud or corruption, was a substantial compliance with the terms of the policy contract. If it was the intention of this court, to hold in the Westchester case, that the validity and binding effect of said finding is solely to be determined upon the terms of the agreement of April 29, 1914, which was

without consideration and surrounded with no element of waiver of estoppel; and, that tested by such rule, said finding was void on its face because of the manner in which the appraisers estimated and entered their conclusions, embodied in the finding, then said decision is also overruled by the Dworkin case, for it was a contract obligation to submit the loss to appraisement under the policy itself. (7) It is specifically held in the Zallee and Dworkin cases that the observance of technicalities that would be required in cases of common-law arbitration, are not required in the case of appraisements under insurance policies. But even in the case of common-law arbitrations, mandatory provisions in contracts, providing therefor, are waived when no objections are made at the time. Tucker v. Allen, 47 Mo. 488; Sweeney v. Vandry, 2 Mo. App. 552. Common-law awards are valid if the arbitrators have fairly investigated the matter in controversy, and have agreed; and are not void for failure to strictly comply with provisions of the agreement, or for non-observance of unimportant technicalities. (8) In an apprisement under an insurance contract, the appraisers are not required to determine the actual cash value of each article, and place the damage on each, at a definite sum. If required, it was only required in so far as deemed necessary by the appraisers. Boutross v. Insurance Co., 100 Kan. 544. (9) Where the award is within the submission and contains the honest decision of the appraisers, it will not be set aside for error in either law or fact, because to do so would be to substitute the judgment of the court, in place of that of the judges chosen by the parties, and make such finding the commencement, and not the end of litigation. Levin v. N. W. Nat'l Ins. Co., 185 Fed. 981; Perry v. Ins. Co., 137 N. Carolina 402; Eberhardt v. Fed. Ins. Co., 14 Ga. App. 340; Commercial Union Ins. Co. v. Dalzell, 210 Fed. Rep. 605. (10) These authorities, and those hereinafter cited are in support of the general rule, that when the amount of loss under an insurance policy has been

submitted to appraisers, both parties are conclusively bound by the finding, in the absence of fraud, or some act, which will amount to misconduct. Hamilton v. Liverpool & London Globe Ins. Co., 136 U. S. 242; 7 Cooley's Briefs on Ins., Eupp. 1505, sec. 3631; Non-Royalty Shoe Co. v. Phoenix Assurance Co., 210 S. W. 37; Young v. Penn. Fire Ins. Co., 269 Mo. 1; Zallee v. Ins. Co., 44 Mo. 530; Steinberg v. Boston Ins. Co., 144 App. Div. (N. Y.) 110; Solem v. Conn. Fire Ins. Co., 41 Mont. 351; Perry v. Ins. Co., 137 N. Car. 402. (11) When an offer to pay plaintiff is unequivocally and unconditionally refused, a formal tender of the amount in money is not necessary, but such refusal will operate as a tender, and stop the running of interest. Enterprise Soap Co. v. Sayers, 55 Mo. App. 15; Stevenson v. Kilpatrick, 166 Mo. 262; Schieley v. Pendleton, 76 Mo. App. 454; McDonald v. Wolf, 40 Mo. App. 302; Johnson v. Garlichs, 63 Mo. App. 575. Where defendant tenders into court the sum of money, which plaintiff, under the evidence, is entitled to recover, the defendant is entitled to a judgment in its favor. Sanders v. Mosberger, 159 Mo. App. 488. (12) Penalty for damages for alleged vexations refusal to pay should not be inflicted when the evidence shows that such refusal was not wilful and without reasonable cause, as the facts would appear to a reasonable and prudent man before the trial. Non-Royalty Shoe Co. v. Phoenix Assurance Co., 227 Mo. 399; Patterson v. Ins. Co., 174 Mo. App. 37; Rollins v. Business Men's Accident Assn., 220 S. W. 1022; Berryman v. Md. Motor Car Co., 204 S. W. 738.

*Cobbs & Logan* for respondent.

(1) The voluntary remittitur of the attorney's fee removes all questions of vexatious refusal to pay and leaves only the validity of the verdict for plaintiff's claim and interest in question. (2) Appellant, as a defense, alleged an agreement for an appraisement and

award made "in accordance with . . . said agreement." Counsel tried this case on those allegations. They cannot now disregard that agreement and contend that the award was valid, under the general terms of the policy, although not made in accordance with that agreement. They cannot change their theory in this court. The appraisers would have no authority but for the agreement appointing them. (3) The question as to the validity of the award in this case was submitted to the jury. (4) The award, to be binding, must be made in substantial compliance with the agreement for submission to appraisers. If it is regular on its face, the question as to whether or not the appraisers complied with that agreement is one of fact for the jury. In this case that fact was submitted to and decided by the jury. Security Printing Co. v. Westchester Fire Ins. Co., 221 S. W. 430. (5) The award in this case is, in fact, void on its face, and appellant cannot complain that the jury found that it has not been made in accordance with the agreement. Security Printing Co. v. Westchester Fire Ins. Co., 221 S. W. 430. (6) The question of tender cannot be material, since the jury found for the full amount claimed by plaintiff.

ALLEN, P. J.—This is an action on a policy of fire insurance issued to the plaintiff, a corporation, by the defendant insurance company on April 1, 1913, insuring personal property contained in a building used by plaintiff in the conduct of its printing business in the city of St. Louis against loss by fire in a sum not exceeding $2000. The policy was one of thirty-nine fire policies covering said property, issued to the plaintiff by various insurance companies, the total insurance aggregating the maximum sum of $100,000; and by the terms of the policy in suit the defendant is liable only for its *pro rata* share of any loss against which plaintiff was insured by these thirty-nine policies.

The property insured is described in the policy as follows: "Equipment and apparatus and improvements,

including motors, presses, machines . . . Furniture, fixtures, tools, implements, office outfit. . . . Monotype machines and matrices. . . . Stock in trade and other merchandise, materials and supplies. . . . Type foundry furnishings, supplies and materials, including type, composition, electrotypes, stereotypes, wood cuts and standing forms, including composition on electrotypes, stereotypes and standing forms,'' etc.

The policy contains the following provisions:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. . . .

"In the event of disagreement as to the amount of loss the same shall as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraisers respectively selected by them and shall bear equally the expense of the appraisal and umpire.

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required. . . .

"No suit or action on this policy for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foergoing requirements, nor unless commenced within twelve months next after the fire."

While the policy was in force, to-wit, on March 18, 1914, a fire occurred in the basement of the building containing the insured property, destroying a part of the property contained in said basement, covered by the policy, and damaging other portions thereof. Subsequently, and after notice to defendant of the loss, plaintiff caused itemized inventories of the property in the building to be prepared which were furnished by the adjusters representing defendant and the other insurance companies interested. Thereafter, upon disagreement as to the loss, these representatives of the insurance company called attention to the provisions of the policy providing for an appraisal, and demanded that such appraisal be made. Thereupon, on April 29, 1914, plaintiff and the insurance companies interested, including defendant, entered into an "agreement for submission to appraisers." The pertinent provisions of this agreement are as follows:

"This agreement . . . Witnesseth, that Joseph N. Weyers and Charles M. Dawson shall appraise and estimate, by items and in detail, the sound value of, and the loss and damage to, the property destroyed or damaged by the fire of March 18, 1914, separately. These

two appraisers shall first select a competent and disinterested umpire, and if the two appraisers fail to agree they shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such sound value and loss and damage and shall be binding upon both parties to this agreement. . . .

"The property on which the sound value and loss and damage is to be determined is as follows, to-wit: (Setting forth the description thereof as contained in the policy) . . .

"It is further expressly understood and agreed that in determining the sound value and loss and damage upon the property hereinbefore mentioned, the said appraisers are to make an estimate of the actual cash cost of replacing or repairing the same, and the actual cash value thereof, at and immediately preceding the time of the fire; and in case of depreciation of the property from use, age, condition, location or otherwise, a proper deduction shall be made therefor."

Of the two appraisers thus appointed, Weyers was selected by plaintiff, and Dawson by the insurance companies. The appraisers duly qualified, and selected one William F. Court to act as umpire in the event that the appraisers should fail to agree. In proceeding to appraise the loss, Weyers and Dawson were unable to agree, and they accordingly submitted their differences to the umpire. Dawson and the umpire ultimately joined in signing an instrument termed an "award," in which Weyers refused to join. This instrument, of date May 25, 1914, is as follows:

"To the Parties in Interest:

"We have carefully examined the premises and remains of the property hereinbefore specified, in accordance with the foregoing appointment, and have determined the sound value and loss and damage to be as follows:

|  | Sound Value. | Loss & Damage. |
|---|---|---|
| "First item—Basement.. | $41,297.37 | $13,434.98 |
| Second item—Office and stock room, first floor | 4,409.00 | none |
| Third item—Bindery, second floor ............. | 5,114.25 | " |
| Fourth item—Press room, third floor .......... | 11,213.00 | " |
| Fifth item—Composing room, fourth floor .... | 53,560.75 | " |
| Total sound value and total loss and damage.. | $115,594.37 | $13,434.98" |

Thereafter, plaintiff, ignoring this "award," filed proofs of loss with defendant, purporting to show a loss of $25,173.92, and subsequently instituted this action.

The petition pleads the legal effect of the policy sued on, and alleges that plaintiff "has duly performed all of the conditions on its part to be done and performed by the terms of said policy, and has fully complied with all of the provisions of said policy." It then alleges the said loss occurring by fire on March 18, 1914, averring that the loss and damage thus caused to the insured property was the sum of $25,173.92, and that defendant is liable for its *pro rata* share of such loss and damage, under a total insurance of $100,000, to-wit, $503.48. Alleging notice to defendant, the giving to defendant of proofs of loss, etc., that defendant has failed and refused to pay the amount due from it to plaintiff under the terms of the policy, and that such refusal was vexatious and without cause, judgment is prayed in the sum of $503.48, with interest from June 7, 1914, and for damages and attorneys fees as for vexatious refusal to pay the loss.

Defendant's amended answer, upon which the cause was tried, denies generally the allegations of the petition, except such as are in the answer specifically admitted. It then avers the issuance to plaintiff of the

thirty-nine policies mentioned above, and sets out a table showing the names of the insurance companies issuing the various policies, the amount of the insurance provided in each, and the amounts alleged by defendant to be due from each company under the "award" which is subsequently pleaded in the answer; the amount due from defendant to plaintiff being thus stated to be $268.70. It is alleged that on or about March 18, 1914, a fire occurred in plaintiff's said premises which destroyed or damaged some of the property specified in these policies; that the companies and plaintiff disagreed as to the amount of loss thereby sustained, and, in accordance with the provisions of the policy providing for an appraisement in the event of such disagreement, the insurance companies and plaintiff, on April 29, entered into a written agreement "in accordance with the said provision of the said policies." providing that one Weyers, selected by plaintiff, and one Dawson, selected by the insurance companies, "should appraise and estimate the suond value and the loss and damage of the property destroyed or damaged by said fire of March 18, 1914, in the premises aforesaid, stating the sound value and the loss and damage separately." After alleging further provisions of this agreement, and the proceeding had thereunder, the answer sets out the "award," shown above, and pleads that the sound value of the property and the loss and damage caused thereto by said fire were thereby determined, "in accordance with the said terms of the said policies and of the said agreement;" and that by said "award" the demand of plaintiff against said insurance companies was fixed and liquidated; and it is alleged that said insurance companies paid the appraiser selected by them, and one-half of the expense of said appraisal, and complied with all of the terms and conditions contained in said provisions of the policies, and of the special agreement; that since the filing of the "award" each of said companies, including defendant, has tendered settlement to plaintiff on the basis of the amount of the loss

209 M. A.—28

payable by it in accordance with such award, but plaintiff declined to accept the "award" or the settlement so tendered; that defendant, prior to the filing of this suit, tendered to plaintiff its proportion of the amount of the award viz., $268.70; that plaintiff has no claim against said companies, or any of them, except for the amount of said "award," and that defendant is ready and willing to pay its proportionate share thereof.

The reply alleges that the appraisement, or "award," set out in the answer is void on its face because it appears therefrom (1) that it is not an appraisement of the property specified in the policy or the special agreement pleaded in the answer; (2) that it is not an appraisement by items and in detail as is required by the policy and special agreement; (3) that it does not separately show the sound value and loss and damage, by items and in detail, as required by the policy and the agreement; (4) that it does not show that the appraisers estimated the actual cost of replacing and repairing the property destroyed or damaged; (5) that it does not show that the appraisers estimated the actual cash value of the property, destroyed or damaged, immediately before the fire; (6) that it shows on its face that it was not made "in accordance with the said terms of the said policy and of the agreement," as alleged in the answer.

Further replying plaintiff denies that the appraisers were fair and impartial, denies that they complied with the provisions of the agreement for appraisal, denies that they appraised and estimated, by item and in detail, the sound value of the property and the loss and damage thereto caused by the fire, or made any appraisal or award, in accordance with any appraisement agreement, denies that the appraisers estimated the actual cash cost of repairing or replacing the property damaged or destroyed, or that they estimated or appraised the cash value thereof at or immediately proceeding the fire, and denies that the amount stated in the answer, as the amount arrived at

by said appraisers, was a fair and impartial estimate of the loss and damage caused by the fire to the property covered by the policy.

And further replying, plaintiff alleges that the appraisers were not in fact fair and impartial; that the appraiser appointed by the defendant and the umpire were partial and biased in favor of defendant and permitted their bias and prejudice to influence their judgment in the appraisement. Further averments are made in keeping with the denials shown above; and it is averred that the appraisers and umpire failed and refused to carry out the provisions of the policy and of the special agreement for appraisement, but disregarded the same; that they made their estimates and appraisement in bulk and not by items and in detail, and did not examine the property by items and in detail, but by examining a few items thereof attempted to estimate and appraise all of said property in the aggregate; and that the alleged appraisement or award is wholly inadequate and far below the actual loss and damage caused by the fire, is invalid and not binding on plaintiff; and that the actual loss sustained by plaintiff as a result of the fire is the amount set out in the petition.

At the trial plaintiff introduced, *inter alia,* a stipulation entered into between the parties on February 10, 1919, by which it was agreed that plaintiff's "Exhibit E" is a correct statement of the loss of "cuts" wholly destroyed as a result of the fire, such loss being $346.65; that plaintiff's "Exhibit F" is a correct statement of the loss of "blank" stock, such loss being $461.49; plaintiff's "Exhibit G" is a correct statement of the loss of "printed forms," such loss being $2491.78; that the cost of repairing shelves, racks, etc., was $50; that the expense incurred by plaintiff in clearing away the debris and preserving and protecting the property from further loss was $855.06. There was no dispute at the trial as to the correctness of these amounts.

The controversy, as narrowed by this stipulation, involves the loss and damage to three classes of property contained in plaintiff's basement, to-wit: (1) standing type forms, i. e. forms which had been prepared and used and which were kept on hand by plaintiff for possible use in the future in filling like orders, and which are alleged to have been totally destroyed; (2) standing type forms, of the character mentioned, alleged to have been partially destroyed; and (3) electrotypes and cuts alleged to have been partially destroyed.

It is unnecessary to here set forth in detail the evidence adduced below. It is sufficient to say that plaintiff, ignoring the proceedings for an appraisal, adduced evidence touching the loss and damage to the insured property, other than that shown by the stipulation, supra. During the cross-examination of the first witness offered by plaintiff, defendant's counsel offered in evidence the said agreement for submission to appraisers, which, upon objection of plaintiff's counsel, was at that time excluded; though plaintiff's witnesses were examined concerning the proceedings relating to such appraisal or attempted appraisal.

In defense the defendant called as witnesses the appraiser Dawson and the umpire Court, as well as other witnesses, introduced in evidence the agreement for submission to appraisers, the so-called "award" and other exhibits, adduced much testimony concerning proceedings had by the appraisers and the umpire leading up to the making of the so-called award, and adduced evidence tending to show that the loss and damage to the insured property did not exceed the amount shown by such award.

Further reference will be made to some portions of the evidence in the course of the opinion.

At the close of plaintiff's case defendant offered a peremptory instruction in the nature of a demurrer to the evidence, which the court refused; and at the close

of the entire case plaintiff again offered such instruc-
tion which was again refused. The cause was submit-
ted to the jury upon instructions offered by plaintiff
and those given of the court's own motion, all of the
instructions offered by defendant being refused, one of
them being an instruction to the effect that under the
pleading and evidence plaintiff could not recover more
than $268.70. The jury returned a verdict for plain-
tiff in the sum of $503.48, the amount claimed in the
petition, with interest from October 22, 1914, amount-
ing to $130.11. The jury assessed no damages for vex-
atious refusal to pay, but did undertake to assess an
attorney's fee in the sum of $200. From a judgment
entered accordingly, the defendant appeals. Plaintiff,
in this court, has voluntarily remitted the amount of
said attorney's fee, and consequently no question is
here involved concerning the same.

I.

It is urged that the court erred in refusing to per-
emptorily direct a verdict for defendant; and that de-
fendant was entitled, at least, to have the jury instruct-
ed that plaintiff could not recover more than the pro-
portionate amount of said award, payable by defend-
ant, to-wit, $268.70. It therefore becomes necessary to
consider the effect to be given to the policy provision
regarding an appraisement, to the special agreement
concerning an appraisement made subsequent to the
fire, and to the so-called award made by the appraiser
Dawson and the umpire.

In Security Printing Company v. Westchester Fire
Insurance Company, 221 S. W. 430, which arose out of
the same fire loss, we had under consideration this
same policy provision, agreement and "award." The
petition and answer in that case were the same as the
petition and answer in this case, but in the Westchester
case the reply was a general denial. The evidence in
the case before us differs somewhat from that in the

Westchester case, though some of the testimony is precisely the same, having been read from the record in the Westchester case.

In the Westchester case we held that the provision of the policy requiring an appraisal of the loss in the event of a disagreement between the parties respecting the same, was not binding upon the plaintiff, and ineffectual to require the plaintiff to submit to such appraisement as a condition precedent to its right to bring its action on the policy. That ruling followed the ruling of the Supreme Court in Young v. Insurance Company, 269 Mo. 1, 187 S. W. 856, where it was held that section 868 Revised Statutes 1909 (sec. 595, R. S. 1919) applied to provisions in a fire insurance policy for an appraisement. That section provides, in substance, that any contract or agreement containing any clause or provision providing for "an adjustment by arbitration" shall not preclude any party or beneficiary thereunder from instituting suit or other legal action on such contract at any time, and that compliance with such clause or provision shall not be a condition precedent to the right to bring or recover in any action. But since the decision in the Westchester case, the Supreme Court has overruled the Young case, in this respect, holding that the statute, supra, has no application to a stipulation in an insurance policy providing for an appraisal of the loss in case of a disagreement between the parties as to the amount thereof, as provided in the policy in suit. It follows, therefore, that the policy provision with which we here have to deal must now be held to be a valid provision, binding upon the plaintiff; for, in the absence of a statute affecting the matter, the validity of a provision of this character cannot be doubted. The provision is not one ousting the courts of jurisdiction, but leaves the general question of liability to be judicially determined, and simply provides a reasonable method of estimating and ascertaining the amount of the loss. [See Dworkin v.

Insurance Company, 226 S. W. 846; Carp v. Insurance Company, 104 Mo. App. 502, 79 S. W. 757; Zallee v. Insurance Company, 44 Mo. 530; 14 R. C. L. p. 1354, Sec. 525.] It is undisputed that there was a disagreement as to the amount of the loss; and an attempt, at least, was made to comply with this provision of the policy.

## II

It has been held in many cases that a provision of this character in an insurance policy is to be regarded as collateral to the contract of insurance, unless by its terms it is made a condition precedent to the right of the insured to sue upon the policy. And it is said that to amount to a condition precedent the stipulation for an appraisal must be clearly made so; but it has been held that such is the effect of a provision that the loss shall not be payable until the amount thereof shall have been determined by appraisers. [See 14 R. C. L., p. 1356. sec. 526, and authorities cited.] In the instant case, as shown above, the policy provides for an appraisal of the loss, in the manner indicated, in the event of a disagreement between the parties as to the amount thereof, and, *inter alia*, provides that "the loss shall not become payable until sxity days after the notice, estimate, ascertainment and satisfactory proof of the loss . . . have been received . . . including an award by appraisers when an appraisal has been required," and provides further that no action on the policy shall be sustainable "until after full compliance by the insured with all the foregoing requirements." This court has held that such provisions require compliance by the assured with the stipulation for an appraisal, as a condition precedent to his right to maintain an action on the policy. [Carp v. Insurance Co., supra, and authorities cited.]

It follows, therefore, that plaintiff was required to comply with this requirement of the policy before he was entitled to maintain an action on the policy. There is no dispute, however, as to the fact that plaintiff, in

the first instance, did all that was required of him in this respect, in that plaintiff, upon the request of the insurance companies, including defendant, entered into the special agreement set out above, whereby the appraisers were appointed, plaintiff selecting one appraiser and the insurance companies the other. After the "award" was made, however, plaintiff disregarded it and instituted this action. The instructions given at the trial below proceeded, in part, upon the theory that the jury were entitled to disregard the appraisal if they found that it was not an appraisal "by items and in detail," as provided in the special agreement for submission to appraisers entered into between the parties subsequent to the fire. The policy contains no such requirement, but merely, in general terms, provides for an appraisal in the event of a disagreement as to the loss. Nothing is stipulated therein as to the manner in which the appraisers shall proceed in making their appraisement, except that they shall "estimate and appraise the loss, stating separately the sound value and damage." It is therefore necessary to determine what effect should be given to the special agreement.

## III

This special agreement, entered into after the fire, whereby the appraisers were appointed, was a practical means of carrying into effect the general provisions of the policy as to an appraisement. It was clearly competent for the parties to contract as to the manner in which the policy provision should be carried out; and we think that this special agreement is controlling on the question as to the manner in which the appraisers, or they and the umpire, were required to proceed in making the appraisement. In Bangor Savings Bank. v. Insurance Company, 85 Me. 68, the policy involved was like that sued upon, containing a general provision for an appraisal in the event of a disagreement as to the loss. After the fire the parties entered into a special agreement regarding the appraisal. Touching this agreement the court said:

''On the otherhand, it is obviously competent for the parties to modify or waive any provisions of their written contract by a subsequent mutual agreement not in writing. [Wiggin v. Goodwin, 63 Maine, 392; Goss v. Nugent, 5 Barn. & Ad. 65; Hall v. Ins. Co., 57 Conn. 105.] The last-named case is precisely in point, and the court said: 'The provision in the policy referred to was not designed to prescribe and it does not intend to prescribe any form of submission. It only gives certain leading features of the submission which were in fact substantially complied with. . . . But the capacities of the parties to contract could not be restricted by the policy so that they could not waive its requirments and make a submission to suit themselves, provided of course it was not otherwise unlawful. So far, therefore, as there is any material difference respecting the duties of the appraisers or the umpire, between the provisions of the policy and the terms of the written agreement for a submission, the former is presumptively superseded by the latter, and in such a case the duties of the appraisers and of the umpire are to be ascertained and their conduct examined with reference to the terms of the submission actually signed by the parties.''

## IV.

In the Westchester case, supra, we held that the ''award,'' signed by one of the appraisers and the umpire, showed upon its face that it was not made in substantial compliance with the terms of the special agreement entered into subsequent to the fire, in that it was plainly not an appraisal ''by items and in detail.'' Appellant finds much fault with that ruling, citing many cases dealing with the sufficiency of appraisals made pursuant to provisions therefor in fire insurance policies. A review of these cases would here serve no useful purpose. In the instant case the property destroyed or damaged consisted of various classes, such as standing type forms,

electrotypes, cuts, printed forms, blank stock, etc., all contained in the basement of the building mentioned. And it seems entirely clear that an appraisal of the sound value thereof and loss and damage thereto consisting merely of the words, "Basement—Sound Value, $41,297.73 . . . Loss and Damages $13,434.98." does not constitute an appraisal of the sound value of and loss and damage to the aforesaid property, *by items and in detail.* Indeed, it seems to us that such appraisal is the very converse of an appraisement by items and in detail, for it is an appraisement in bulk, or lump, of the sound value of, and the loss and damage to all of the property contained in such basement taken as a whole. It seems obvious that no attempt was made to comply with this provision of the special agreement.

In this connection we may say further that it appears unnecessary to refer in more detail to the testimony adduced regarding the acts of the appraisers and the umpire. Appellant makes much of the fact that the appraisers had with them the inventories referred to above, which, it is said, they used and "checked over" in examining the property in the basement. But the provision of the special agreement here in question is not one concerning merely the manner in which the appraisers were required to examine the property, but has to do with the character of the appraisal itself, requiring an appraisal "by items and in detail." Such, we think, is not the character of the appraisal made. However, this question was treated below as one of fact for the jury; and of this, we think, defendant has no ground of complaint.

## V.

In view of what we have held above, the attempt to have an appraisal made in accordance with the terms of the special agreement proved abortive. And it seems entirely clear from the evidence that such attempt failed through no fault on the part of the insured, this plaintiff. The question then arises, whether plaintiff, under the

circumstances, was required to demand that another appraisal be had, or take steps to secure an appraisal which would comply with the terms of the special agreement, before he was entitled to maintain an action on the policy. This question is one which has been frequently before the courts and as to which the authorities are not harmonious. In 14 Ruling Case Law, p. 1361, sec. 532, it is said:

"The prevailing view seems to be that where there is a failure to secure an award, after a submission to arbitration has been made in accordance with the stipulatiion therefor in the contract of insurance, and the failure is due to the fault of neither party, the insured is not compelled to submit to another delay, but may forthwith bring his action in the courts. This is placed upon the ground that a claimant under a policy ought not to be tied up forever without his fault and against his will by an ineffectual arbitration."

The view that, in cases of this character, where an attempted appraisal has failed without fault on the part of the insured, he may then bring his action on the policy, appears to be sound and to be sanctioned by the weight of authority. The insured's right of action is not derived from the agreement to submit to appraisement, which merely provides a means of ascertaining the loss, but from the polciy; and if he, in good faith, complies with the terms of the policy, and is not chargeable with the failure of the appraisers to make a valid appraisal, his right of action on the policy would seem to be complete. In this connection see: Bernhard v. Rochester German Ins. Co., 79 Conn. 388, 1. c. 396; Connecticut Fire Ins. Co. v. Cohen, 97 Md. 294; Shawnee Fire Ins.Co. v. Pontfield, 110 Md. 353, 1. c. 360, et seq; Niagara Fire Ins. Co. v. Bishop, 154 Ill. 1; Pretzfield v. Mercantile Ins. Co., 123 N. C. 164; Jerrels v. Ins. Co., 82 Kas. 320; 14 R. C. L., p. 1361, sec. 532.

In the case before us, the evidence shows that plaintiff complied with the policy provision concerning an

appraisal by selecting a competent and disinterested appraiser and entering into the special agreement whereby the appraisers were appointed and whereby the parties stipulated as to how the policy provision should be carried out. And it does not appear that the plaintiff in any wise interfered with the appraisal thereafter or did anything to contribute to the failure of the appraisers and the umpire to make an appraisal in accordance with the terms of the special agreement, or acted otherwise than in good faith throughout the matter. Under all of the circumstances we do not think that plaintiff·was required to submit to further delay and demand that further steps be taken to secure a valid appraisal, as a condition precedent to his right to maintain an action on the policy. The policy does not in terms so provide; and having performed that which was required of him by the policy in this respect, and the attempt to secure an appraisal in compliance with the special agreement having failed without fault on his part, it would seem to be consonant with reason and justice to hold that he is then entitled to bring his action on the policy. What is said in the course of the opinion in Carp v. Insurance Co., supra, not wholly consistent with the views expressed above appears to have been unnecessary to a decision in the case, and, we think, should not be followed.

Whether a party may be held responsible, under some circumstances, for misconduct on the part of the appraiser whom such party appoints, resulting in a failure to consummate an appraisal, is a matter as to which the authorities are not in harmony. [See Shawnee Ins. Co. v. Pontfield, supra; Connecticut Fire Ins. Co. v. Cohen, supra; Niagara Fire Ins. Co. v. Bishop, supra; McCullough v. Insurance Co., 113 Mo. 606, 21 S. W. 207; Carp v. Insurance Co., supra.] But that question does not appear to be involved in the present case. So far as concerns the failure of the two appraisers to agree, this appears to have resulted from an honest difference of opinion. It cannot be said that the attempted appraisal,

under the special agreement, failed because of any misconduct on the part of the appraiser appointed by plaintiff; and our decision herein does not proceed upon the theory that defendant waived or forfeited its right to an appraisal by reason of any misconduct on the part of the appraiser appointed by defendant attributable to the latter.

It follows that we must disallow appellant's assignment of error as to the refusal of the court below to peremptorily direct a verdict for the defendant, as well as its assignment of error as to the refusal of appellant's instruction to the effect that plaintiff could not recover more than $268.70.

## VI.

In this connection we note that defendant contends that plaintiff failed to establish a case by its evidence, and that consequently the court erred in refusing to direct a verdict for defendant at the close of plaintiff's case. This argument proceeds upon the theory that the burden was upon plaintiff to allege and prove compliance by it with the policy provision regarding an appraisal, as a condition precedent to plaintiff's right to sue; and it is said that plaintiff neither alleged nor proved compliance therewith. As to the petition, we may say, in passing, that the allegation to the effect that plaintiff complied with all the terms and conditions of the policy was sufficient in this respect. [See Jerrels v. Ins. Co., supra.] And if it be granted that the burden was upon plaintiff to show that there was a disagreement as to the loss and the facts showing compliance by plaintiff with said provision of the policy which became operative in such event—which we need not here decide—the matter is not now one of consequence. This is the reason that defendant put in evidence the special agreement for submission to appraisers, the so-called award, and evidence touching the proceedings on the part of the appraisers. If there was any error in

overruling the demurrer to the evidence at the close of plaintiff's case, it is not now a matter of which defendant may avail itself, since the evidence as a whole makes it appear that plaintiff complied with the terms of the policy regarding an appraisal, and that the appraisal failed through no fault on its part. It is elementary that in such situation the ruling below on the demurrer to the evidence is to be adjudged on appeal in the light of all the evidence in the case no matter by whom it may have been offered. [See Battles v. United Railways Co., 178 Mo. App. 596, l. c. 613, and authorities there cited, 161 S. W. 614.]

## VII.

Over defendant's objections plaintiff, to substantiate the averments of the petition respecting the alleged loss and damage to the insured property, was permitted to introduce in evidence plaintiff's Exhibits B, C, and D. Exhibit B is headed "Inventory of type forms that are total loss as result of fire March 18, 1914," and is a lengthy tabulation of 364 items, with columns showing the description and size of each form listed, the number of pounds of type contained therein, the time required, in hand composition or monotype composition or both, to restore the same, followed by columns purporting to show the respective values of the type and other material contained therein and of such composition; the total of these values being stated in the last column. The totals of the columns of values are: Value of other material $257.60, value of type $971.12, value of hand composition $4764.24; and value of monotype composition $3352.35; the whole totaling $9345.31.

Exhibit C is headed "Inventory of cost of material and time to restore type forms damaged in fire of March 18, 1914," and is a tabulation of 407 items, with columns headed as in plaintiff's Exhibit B. The totals of the columns of values are: Value of other material $388.78, value of hand composition $8579.81, value of mono-

type $14, value of type $423.38; the whole totaling $9405.97.

Exhibit D is a written tabulation headed "Cost to remount half tones, zinc plates, etc., damaged in fire March 18, 1914," purporting to show the cost of remounting the 130 items' therein contained, totaling $2117.66.

A witness for plaintiff was permitted, over defendant's objections, to testify that these exhibits, together with exhibits E, F. and G, mentioned above, showed the "details of the loss"—showed "the loss with respect to each item of property involved in the fire." Another witness for plaintiff was permitted, over defendant's objections, to testify that Exhibit B shows correctly the loss and damage to the items of property therein described, and to answer similar questions as to Exhibits C and D.

We think the court erred in admitting testimony of this character to show the loss. As to type forms totally destroyed, plaintiff was entitled to recover the value thereof immediately preceding the fire, as being the actual loss sustained. And upon type forms partially destroyed plaintiff was entitled to recover "a sum of money equal to the damage done to the property." [Sec. 6231, R. S. 1919.] Though the policy provided that the loss or damage recoverable could not exceed what it would cost to repair or replace the property with material of like kind and quality, it is specifically provided therein that the loss or damage shall be ascertained or estimated according to the actual cash value at the time of the loss. And regardless of the policy provisions in this respect, recovery for a partial loss is governed by the statute, supra, which provides that "it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property, or repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said property shall be in as good condition as before the fire, at the option of the insured."

Under this section the insured, suing for a partial loss under the policy, is entitled to recover an amount equal to the damage done to the property; and the damage done to the property is properly ascertainable by proof of the reasonable value thereof immediately prior to the fire and the reasonable value thereof immediately after the fire. [See: Tinsley v. Aetna Ins. Co., 199 Mo. App. 693, l. c. 708, 205 S. W. 78; Non-Royalty Shoe Co. v. Insurance Co., 277 Mo. 399, 210 S. W. 37; McIntyre v. Insurance Co., 131 Mo. App. 88, l. c. 94, 110 S. W. 604; Sharp v. Insurance Co., 164 Mo. App. 475, 147 S. W. 154.]

The Exhibits B and C purport to show not the reasonable value of the property immediately prior to the fire, but the cost, in labor and material to replace the forms in question. Such cost would not necessarily be the measure of plaintiff's recovery; and we think that it was prejudicial error to permit witnesses to state their conclusions that the same constituted the loss and damage to the property. It is pointed out by respondent that the policy by its terms covered "composition, . . . standing forms, including composition on electrotypes, sterotypes and standing forms." But while this is true, such provisions must be taken to mean that the cost of composition was intended to be covered when such cost was an element entering into the determination of the value of the property at the time of the loss. It does not follow that plaintiff was entitled to recover the cost of composition to restore type forms that, before the fire, were worthless except for the material contained therein. These forms were forms that had been used for printing orders or "jobs" and had been placed in the basement of this building for possible future use. Many of them had been thus stored away for years, and the evidence is quite indefinite as to the number of such forms that might be regarded as "live forms." It is said that some of them had not been used for ten years. Touching this matter a witness for

plaintiff testified that plaintiff only kept forms that it expected to use again; and that such forms have a value, first, on account of the material in them, which is determined by weight and market price, and, second, a value in the cost of composition. When asked if the latter did not depend upon whether "you can repeat the same job and print from the same form," the witness said: "There is an open question there." He later said that the form might have a distinctive value, not only for reprinting the exact job, but for use by making slight changes therein.

A witness for defendant, for many years experienced in the printing business testified that he would determine the value of a form that had been used and put away, "by the possibility of a return order," but that he "generally estimates that its value would be about twenty-five per cent of the original cost of composition."

While these exhibits were admissible in evidence in connection with other proper evidence tending to show the loss and damage to the property, we think that the testimony to which we have referred was inadmissible; and it seems that plaintiff's case, as to proof of the loss and damage recoverable, rests upon testimony of this character, whereas proof should have been adduced tending to show the actual value of the property, if any, totally destroyed, and tending to show the damage done to the property partially destroyed, under the rule stated above.

It is unnecessary to discuss other questions raised. The judgment is reversed and the cause remanded. *Becker* and *Daues, JJ.,* concur.