# T. W. SHARP, Respondent, v. THE NIAGARA FIRE INSURANCE COMPANY, Appellant.

### Springfield Court of Appeals, May 6, 1912.

1. FIRE INSURANCE: Personal Property: Depreciation in Value: Burden of Proof. In an action on a fire insurance policy it appeared that the trial court tried the case on the theory that the property insured was real estate and declared by instructions given that it devolved upon defendant to show a depreciation in the value of the property if, any, at the time of the loss. This was *held* error for the reason that under the evidence it appeared that the property insured was personal property and in such case it devolved upon the plaintiff to show the actual cash value of the property insured at the time of the fire; and his consequent loss by reason of its destruction.

2. ————: Arbitration: Failure of Appraisers to Agree: Action on Policy. In an action on a fire insurance policy a provision of the policy required that in the event of disagreement as to the amount of loss, the same should be ascertained by two appraisers, the insured and the company each selecting one and the two so chosen to select an umpire; but it appeared that the two appraisers after being selected were unable to agree upon an umpire and the evidence supported the conclusion of the trial court that such failure to agree upon an umpire was not due to the misconduct of plaintiff or his appraiser. *Held*, that the commencement of this suit after the abandonment of the effort to arbitrate the loss was not premature.

3. PLEADING: Practice: Failure to File Reply. The law is well settled in this state that after trial and verdict, without any objection that a reply had not been filed and when the trial has been conducted as though a reply had been filed, no advantage can be taken of such omission and the failure to reply will be considered waived.

4. REAL ESTATE: Fixtures. It is an elementary principle of the common law that land includes houses and buildings thereon and that whatever is affixed to the soil is thereby made a part of it and passes by grant of the land without other designation.

5. ————: ————: Trade Fixtures: Landlord and Tenant: Personal Property. As between landlord and tenant annexations made by the tenant to the real estate in aid of his trade are on the grounds of public policy removable by the tenant

because they are not presumed to have been annexed with the intention of making them permanent additions to the realty and they continue to be personal property.

6. ———: ———: ———: ———: ———: Fire Insurance. In an action on a fire insurance policy to. recover for the destruction of ice plant machinery which was being operated in a building located on a railroad right of way, a portion of which right of way had been leased to the plaintiff, the evidence is examined and *held* not to show that the machinery or building were so incorporated with the freehold as to become a permanent part thereof and that as between the landlord and tenant the reasonable conclusion is that they remained personal property.

7. FIRE INSURANCE: Pleading: Valued Policy Law: Real Property. In an action to recover insurance for damages caused by fire, since the adoption of section 7020, Revised Statutes 1909, which is called the valued policy law, the petition in cases where real property is insured need not state the value of the property; the policy fixes the value.

8. CONTRACTS: Must Yield to Statutory Provisions: Fire Insurance. Laws in existence at the time of the making of a contract are necessarily referred to in all contracts made under such laws, and no contract can change the law and so in insurance policies the stipulation in the policy must yield to the statute.

9. FIRE INSURANCE: Real Property: Total Loss: Burden of Proof. Under sections 7020 and 7021, Revised Statutes 1909, the mode of estimating the depreciation and the burden of proving the depreciation is confined exclusively to total loss in cases of insurance of real estate.

10. ———: Valued Policy Law: Three-fourths Clause: Real Property: Personal Property. Section 7030, Revised Statutes 1909, which provides that no company shall take any risk on any property in this state at a ratio greater than three-fourths of the value of the property insured and when taken its value shall not be questioned in any proceeding, has been *held* to be a general provision applying to both real and personal property.

11. ———: ———: Personal Property: Burden of Proof. Under the insurance laws of this state a fire insurance policy on chattels is valued only to the extent of precluding the company from denying that value at the time the policy was written, but the burden is upon the plaintiff to show the value of the property insured at the time of the fire.

12. ————: ————: Evidence of Value: Harmless Error. In an action on a fire insurance policy covering ice plant machinery, where the plant has been running five years before the policy was issued and the fire took place fifty-one days after the policy was issued, it was *held* not prejudicial error for the trial court to refuse to allow a witness to testify concerning the purchase price of the machinery at the time it was installed, five years previous thereto.

13. ————: ————: ————. In an action on a fire insurance policy covering ice plant machinery, it is *held* that the cash value of plaintiff's property at the time it was destroyed by fire was in issue and that the trial court should have admitted in evidence the testimony of defendant's witnesses, tending to show the value at the time of the destruction of the property by fire.

14. ————: ————: Personal Property: Value of Property: After Fire. The legal definition of what constitutes a total loss as these words are used in the statute concerning valued policies, has no application to cases of insurance of personal property and the adjustment of losses thereunder and if any of the personal property insured after the fire is suitable for any purpose and by reason thereof has a market value, such value should be taken into consideration in ascertaining plaintiff's actual loss.

15. ————: Pleading: Personal Property. In an action on a fire insurance policy covering personal property, the petition should state the value of the property at the time of the fire, what pecuniary interest the plaintiff had in it and that the loss was due and payable.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*Fyke & Snider* for appellant.

(1) Defendant should not have been permitted to show the value of the property insured immediately before it was damaged and the court's refusal to permit the introduction of evidence to that end was error. Stevens v. Ins. Co., 120 Mo. App. 107; Surface v. Ins. Co., 157 Mo. App. 570; Burge v. Ins. Co., 106 Mo. App. 255; Howerton v. Ins. Co., 105 Mo. App. 575;

Gustin v. Ins. Co., 164 Mo. 172. (2) The three-fourths value clause, or condition of the policy plainly and legally limits the liability of the defendant to its pro rata share of the three fourths of the value of the property at the time of the fire. Surface v. Ins. Co., 157 Mo. App. 570; Singleton v. Ins. Co., 45 Mo. 250; Roberts v. Ins. Co., 94 Mo. App. 142; Malin v. Ins. Co., 150 Mo. App. 642; Ins. Co. v. Johnson, 127 S. W. 765; Blum v. Ins. Co., 85 Me. 389; Brown v. Ins. Co., 105 Mass. 396; Huckins v. Ins. Co., 31 N. H. 238; Cheesboro v. Ins. Co., 61 Mich. 333. (3) It is admitted there was a disagreement between the parties as to the amount plaintiff's property had been damaged. Thereupon defendant requested and it was incumbent on plaintiff to have the damage appraised, and under the contract until an appraisal was had a right of action could not mature. The court erred in disregarding this condition of the contract and the appraisal agreement as indicated by the declaration given by the court on its own motion. Gragg v. Ins. Co., 132 Mo. App. 405; Murphy v. Ins. Co., 61 Mo. App. 323; McNess v. Ins. Co., 69 Mo. App. 238; Zalisky v. Ins. Co., 108 Ia. 341, 79 N. W. 69; Graham v. G. A., 79 N. E. 930; Fowbile v. Ins. Co., 106 Mo. App. 527.

*S. M. Meeks* and *Geo. M. Miley* for respondent.

(1) Defendant offered no testimony and made no attempt to show any depreciation in the value of the property during the fifty-one days which elapsed between the date of the policy and the burning of the property nor that the property was worth less at the date of the fire than at the date of the policy, nor as to the value of the property insured at the date of the fire. Rogers v. Ins. Co., 139 S. W. 266. (2) There was no error on the part of the court in refusing defendant's declarations of law, 5 and 6, because they were not predicated upon the evidence and the ques-

tion was fully covered, in view of the testimony, by the declaration of law given by the court and set out at page 43 of appellant's abstract. Rogers v. Ins. Co., 139 S. W. 267. (3) The court found as a matter of fact that the failure of the effort to arbitrate or appraise was without any fault or wrong doing on the part of the plaintiff and there is abundant evidence to support this finding.

NIXON, P. J.—This was an action by the plaintiff on a policy of fire insurance upon property situate in Thayer, Mo. The plaintiff obtained judgment for the sum of $300 on his frame, metal roof, building, and the sum of $2080 on his machinery, from which the defendant has appealed.

The petition on which the case was tried is as follows (formal parts omitted):

"Plaintiff for his cause of action states that the defendant is, and was at all times hereinafter mentioned, a corporation, duly organized and existing, and doing a fire insurance business, under the laws of the state of Missouri, with right to sued and be sued.

"Plaintiff further states that on the third day of November, 1910, he was doing business in Thayer, in said state of Missouri, in the name of Crescent Ice Company, and on that date defendant by its local agent, George M. Durst, made its policy of insurance whereby in consideration of the payment by plaintiff to defendant of the premium of fifty dollars, defendant insured plaintiff against loss or damage by fire to the amount of three hundred dollars on his frame, metal roofed building situated on the Frisco railroad grounds, southeast of the roundhouse in Thayer, Mo., and twenty-two hundred dollars on boiler, engine, compressor, condensers, brine tank, and all pipes and other permanent fixtures connected with and used for the making and keeping of ice—and also on bottles, cases, filters, tables and such other fixtures and ma-

chinery as is commonly used in bottling works, all while contained in the said biulding, from noon of the third day of November, 1910, to noon of the third day of November, 1911. Said policy is herewith filed, marked 'Exhibit A,' and made a part hereof. That the language above used in the description of the property so insured is an exact copy of the language used in said policy for said purpose.

"Plaintiff further states that at the time of the issuing of said policy, and at all times from said date to the occurrence of the fire hereinafter mentioned, plaintiff had an interest in all the property insured, as owner thereof, to an amount in each case exceeding the amount of said insurance.

"That on the twenty-fourth day of December, 1910, and while said policy was in force, all of the property herein described was totally destroyed by a fire, including said building, while all the other property mentioned in said policy and covered by the same, was contained in said building, and all situated in Oregon county in the state of Missouri.

"That there was other and additional insurance upon said property, but that the same same was taken out with the knowledge and consent of the defendant and that at all times  herein mentioned, up to the occurrence of the fire herein described, the plaintiff had an interest in all of the property insured, as owner thereof, to an amount in each case exceeding the amount of the aggregate of all the insurance upon said property.

"That plaintiff duly performed all of the conditions required of him by the terms of said policy and in due time after said fire, and more than sixty days before the commencement of this action, to-wit, on the twentieth day of February, 1911, gave to the defendant due notice and proof of the fire and loss aforesaid, and demanded payment of the sum insured.

But defendant has failed and refused and still fails and refuses to pay the same.

"Plaintiff further states that the defendant has vexatiously refused to pay the amount of said loss under said policy.

"Wherefore plaintiff prays judgment for the sum of twenty-five hundred dollars, with interest thereon, and for the further sum of two hundred and fifty dollars because of said vexatious refusal to pay said loss, and for a reasonable attorney's fee for plaintiff's attorney."

The answer of the defendant sets up, among other things, the following provisions of the policy:

"This company shall not be liable for a greater amount than three-fourths of the actual cash value of the property covered by this policy at the time of the loss, and in case of other insurance, whether policies are concurrent or not, then for only its pro rata proportion of such three-fourths value.

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained and estimated according to such actual cash value, with proper deductions for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers as hereinafter provided, and the amount of loss or damage having been thus determined the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate or satisfactory proofs of the loss have been received by this company in accordance with the terms of this policy.

164 App.—31

"In the event of disagreement as to the amount of the loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one and the two so chosen shall first select a competent and disinterested umpire, the appraisers shall then together estimate and appraise the loss, stating separately sound value and damage, and failing to agree shall submit their difference to the umpire and the award in writing of any two shall determine the amount of such loss, the parties thereto shall pay the appraisers, respectively selected by them and bear equally the expenses of the appraisal and umpire."

The plaintiff did not file a reply.

Plaintiff at the time of taking out the insurance was doing business in the town of Thayer under the name of the Crescent Ice Company & Bottling Works of which he was the owner. The policy of insurance in question provided for insurance on two separately enumerated items of property, viz.: Three hundred dollars on the frame, metal roof, building, of the plaintiff situate on the grounds of the St. Louis & San Francisco Railroad Company, and twenty-two hundred dollars on the boiler, engine, compressor, condensers, brine tank, pipes and other permanent fixtures connected with and used for the making and keeping of ice, bottles, cases, fiilters, tables, and other fixtures and machinery commonly used in bottling works. The entire insurance on the building and contents was ten thousand dollars, distributed as follows:

Fidelity-Phoenix Fire Insurance Co., $250 on building, $2,000 on machinery.

Insurance Company of North America, $325 on building, $2,300 on machinery;

St. Paul F. & M. Insurance Co., $325 on building, $2,300 on machinery;

Niagara Fire Insurance Co., $300 on building, $2,200 on machinery.

Plaintiff had leased the ground on which the building stood from the St. Louis & San Francisco Railroad Company for a term of ten years. There were two buildings for which plaintiff said he paid $650; one of them was a stone building and was not burned; plaintiff testified that he bought the buildings about a year before he put in the ice plant. The capacity of the ice plant was about six tons daily, and it had been in about five years before the fire occurred; it was a complete outfit and was purchased from F. W. Wolf & Company of Chicago a short time before it was set up. The plaintiff testified that as a result of the fire the building insured was a total loss. Also that the bottles were melted, cases burned, filters damaged, and that the sides of the brine tank were warped by the heat and not in fit condition for use and that to have it repaired would require taking it apart and re-riveting it, which could be done by sending and getting a man to do the work. That the condensers were also damaged, but could be repaired, which, however, would necessitate sending them elsewhere to be tested. That the engine was in such condition that it was only fit for a sawmill and cheap purposes and would not do for manufacturing ice. There was no testimony as to the boiler. About four hundred cases estimated to be worth one dollar and twenty cents each were not burned, making a total of $480.

After the fire, the parties having failed to agree on the amount of loss and damage, entered into a written appraisal agreement (on January 16, 1911) in which Joseph Raskilly was selected by the insurance company and William Bailey was selected by the plaintiff as appraisers to estimate and determine the value and the loss and damage by the fire, and they were to proceed as outlined in the portions of the policy of insurance hereinbefore set out. As we have seen, the

provision of the policy was that the two appraisers should select a competent and disinterested umpire, and that the appraisers should then together estimate and appraise the loss. After a prolonged effort on the part of the two appraisers they failed to agree on a third man to act as umpire. During this period, Raskilly suggested some five persons to act as umpire, and numerous others were suggested by Bailey, but all of them were rejected for one reason or another. The evidence on this portion of the case tended to support the conclusion of the trial court that the failure to agree on a man to act as umpire was not due to any wrongdoing or misconduct by plaintiff or his appraiser. The effort to arbitrate the loss was finally abandoned and plaintiff commenced this suit. We are of the opinion that the commencement of the suit under the circumstances was not premature.

The appellant contends that it was entitled to judgment because the answer set up matter which if true is a complete legal defense, and that as no reply was filed by the plaintiff, defendant was entitled to judgment on the pleadings.

The law is well settled in this state that after trial and verdict without any objection that a reply has not been filed, and when the trial has been conducted as though a reply had been filed, no advantage can be taken of such omission and the failure to reply will be considered waived. [Ferguson & Wheeler v. Davidson, 147 Mo. 664, 49 S. W. 859; State ex rel. Steel v. Phillips, 137 Mo. 259, 38 S. W. 931.]

The fundamental question that lies across the threshhold of this case is whether the subject-matter of the insurance was personal property or real estate. The court tried the case on the theory that there was a total loss and that the property insured was real estate, or on the theory that since the adoption of the so-called valued policy law in this state, the statutory provision for the adjustment of fire losses are the

same whether the property destroyed is personal or real. As we have seen, the evidence tended to show that the building containing the machinery comprising the ice plant and soda pop factory was standing on the right of way of the St. Louis & San Francisco Railroad Company which had been leased to plaintiff prior to the time of the issuance of the insurance policy in question, and that the boiler, engine, compressor, condensers, brine tank, and pipes, comprising the machinery of the plant were in the frame, metal roof, building insured and were used for making and keeping ice, and that the bottles, cases, filters, etc., were such as are commonly used in bottling plants. Under the evidence it is apparent that the relation of the plaintiff to the railroad company was that of a tenant. It is an elementary principle of the common law that land includes houses and buildings standing thereon, and that whatever is affixed to the soil is thereby made a part of it and passes by grant of the land without other designation. Personal property prepared and intended to be used with the land, having been affixed to it and used with it, becomes a part of it by accession. To this general principle there are equally well-settled exceptions under which fall trade fixtures, and as between landlord and tenant annexations made by the tenant in aid of his trade are on grounds of public policy removable by the tenant because they are not presumed to have been annexed with the intention of making them permanent additions to the realty, and they continue to be personal property. [Havens v. Fire Ins. Co., 123 Mo. l. c. 419, 27 S. W. 718.] It is said that there is no precise definition of a trade fixture; but generally where additions to the realty are to the pecuniary advantage of the tenant they are probably trade fixtures. [19 Cyc. 1065.] In the absence of contract there are certain limitations on the right of the tenant to remove trade fixtures occasioned by the nature of the fixture,

degree of annexation, the effect of removal from the freehold, and several other restrictions; among others, where the fixture is so incorporated with the realty as to show an intention to make it a permanent addition or where its removal will seriously injure the realty. In this case the evidence fails to show any express contract between the railroad company as lessor and the plaintiff as lessee as to the conditions on which the plaintiff attached the ice plant and soda pop factory to the building, but they were undoubtedly attached for the advantage of the tenant. The evidence was insufficient to warrant the conclusion that the subject-matter of the insurance in this case was other than trade fixtures as the evidence did not show that the machinery or building were so incorporated with the freehold as to become a permanent part thereof, and hence as between landlord and tenant the reasonable conclusion is that they remained personal property.

In actions to recover insurance for damage caused by fire, since the adoption of section 7020, Revised Statutes 1909, which is called the valued policy law, the petition in cases where real property is insured need not state the value of the property; the policy fixes that. [Bode v. Firemen's Ins. Co., 103 Mo. App. 289, 77 S. W. 116; Jones v. Philadelphia Underwriters, 78 Mo. App. 296.] As to such policies, after that act took effect, the act itself is to be treated as if incorporated therein, the general rule being that laws in existence are necessarily referred to in all contracts made under such laws and that no contract can change the law, and that in such cases the stipulation in the policy must yield to the statute. [Havens v. Fire Ins. Co., supra, l. c. 417.] This statute expressly provides that "in case of total loss of the property insured, the measure of damages shall be the amount for which the property was insured, less whatever depreciation in value, below the amount for which the property is

insured, the property may have sustained between the time of issuing the policy and the time of the loss, and the burden of proving such depreciation shall be upon the defendant; . . . ." However, by section 7021, it is provided that this and the preceding section shall apply only to real property insured and that any condition in any policy of insurance contrary to the provisions of this article shall be illegal and void. Under the express terms of these sections, therefore, the total loss and the mode of estimating the depreciation and the burden of proving the depreciation is confined exclusively to total loss in cases of insurance of real estate. Section 7030 of the same chapter provides that no company shall take any risk on any property in this state at a ratio greater than three-fourths of the value of the property insured, and when taken, its value shall not be questioned in any proceeding. This provision has been held to be a general one and to apply as well to real as personal property. [Howerton v. Iowa State Ins. Co., 105 Mo. App. 575, 80 S. W. 27.] And a policy on chattels is valued only to the extent of precluding the company from denying their value when the policy was written. [Stevens v. Fire Ins. Co., 120 Mo. App. 88, 96 S. W. 684.]

The court of its own motion gave the following declaration of law:

"The court declares that as the law prohibits an insurance company insuring property at more than three-fourths of its value, it will be presumed in the absence of evidence of fraud, in such valuation, that the property at the time the insurance was taken was of the value of one-third more than the amount for which it was insured and as there is no evidence in this case of any depreciation of value from the time of the insurance until the time of the fire, and no evidence that the property burned was of any value after the fire, and the only evidence as to any change or

alteration of conditions, value, or situation of the property insured from the time of the insurance to the date of the fire, being the removal from the building of a portion of the property insured, the finding should be for the plaintiff, for the amount for which the property was insured, less the pro rata value of the property so removed and not destroyed, as between the policy sued on in this case and the other policies.

"And the court further declares that an agreement to appoint two persons as arbitrators, one to be selected by each party, and for the two to select a third party as referee, will not preclude a policy holder from suing on the policy when it appears that the arbitrators cannot agree as to such referee, and have without any fault or wrongdoing on the part of the plaintiff, entirely abandoned all efforts to arbitrate such loss."

It will be seen from this declaration of law that the court held that because there was no evidence of the depreciation of value of the property insured between the date of the insurance and the time of the fire and because there was no evidence that the property burned was of any value after the fire and no showing that the situation of the insured property from the date of the insurance to the date of the fire was changed, the plaintiff should recover the full value for which the property was insured less the pro rata value of the property removed. This was a trial of the case on the theory that the property insured was real estate. But as the property insured was personal property, it was erroneous to declare that it devolved upon the defendant to show the actual value of the property at the time of the loss as the policy provided that the damage should be ascertained and estimated in accordance with the actual cash value with proper deduction for the depreciation, however caused. In such case it devolved upon the plaintiff

to show the actual cash value of the property insured
at the time of the fire and his consequent loss by
reason of its destruction; but as evidence of the value
of the property at the time of the loss he would have a
right to show that the property having been insured
for three-fourths of its value under section 7030 its
value at the time of the fire was four-thirds of the
amount of the insurance, and the defendant company
would be estopped from denying that such was not
the true value of the property on the date the policy
of insurance was issued.   The effect of this statute is
very clearly stated in Stevens v. Fire Ins. Co., 120
Mo. App. l. c. 107, 108, 96 S. W. 684, as follows: "It
does not command that for all the years of the risk
covered by the policy and during its life the goods
shall remain at the value of $800, or of any other
amount.   It operates only to fix the value at the time
of the issuance of the policy and denies the right of
the insurance company to thereafter say that at that
time they were not of the value mentioned. . . .
That the whole theory of insurance is based upon the
idea of indemnity only, is fundamental, and except
something more than this is affixed by the statute or
policy, the insurer, as a matter of common justice, has
the right always to settle on the basis of indemnity
for the loss suffered. . . .   The section of the
statute quoted renders the policy on chattels valued
only in so far as it precludes the company from deny-
ing their value as mentioned when the insurance was
written, and aside from this, it does not influence the
question in the least."

At the trial of this case on cross-examination
of the plaintiff he stated that he purchased his ice
plant, being a complete outfit, from F. W. Wolf &
Company of Chicago, and that it had been run about
five years prior to the time of the fire.   He was then
asked by the defendant what was the purchase price
at that time.   The court, on objection of the plaintiff,

refused to allow the witness to answer on the ground that the defendant under the statute could not show the value of the property insured, at the time of the insurance, to be less than the amount for which it was insured. As the fire took place fifty-one days after the policy was issued and the plant had already been run five years, we are of the opinion that no prejudicial error was committed by excluding this evidence.

The defendant subsequently introduced as a witness Joseph Raskilly who qualified as an expert in the sale and erecting of ice machinery and who stated that on December the tenth and on January the eleventh he was familiar with the cost and value of ice machinery and was familiar with the machinery that F. W. Wold & Company of Chicago manufactures and puts up. After having thus qualified as an expert as to his knowledge of machinery similar to that of the plaintiff, he was asked this question: "At the time named, December 24, 1910, state to the court the value of one of such plants of six ton capacity, installed and ready to run at Thayer, Mo." He was also asked whether he was able to state at that time what it would cost to purchase and install one of Wolf's plants such as had been described to him, after he had stated that he knew the value of such a plant. The answers to the above questions were objected to by the plaintiff and sustained by the court. As the cash value of the plaintiff's property at the time it was destroyed by fire on December the tenth was in issue, we think the evidence was competent and admissible, its probative value to be determined by the triers of the fact.

The legal definition of what constitutes a "total loss" as these words are used in the statute concerning valued policies has no application to cases of insurance of personal property and the adjustment of losses thereunder. The plaintiff's evidence tended to show that the fire did not cause a total loss of the property covered by his policy of insurance. The

plaintiff as a witness testified that while the brine tank was warped by the heat, it could be repaired by sending for a man and having the tank taken apart and re-riveted; that as to the condensers the solder on the ends was melted and while they would be useless for making ice they could probably be repaired but that they would have to be sent elsewhere to be tested; that as to the engine, it could be repaired so as to be used for a sawmill and cheap purposes; as to the condition of the boiler no evidence was offered. If any of the property insured, after the fire, was suitable for any purpose and by reason thereof had a market value, such value should be taken into consideration in ascertaining plaintiff's actual loss or the damage he had suffered.

As this case is to be re-tried on the theory that the subject-matter of the insurance was personal property, it is suggested that plaintiff amend his petition so as to conform to that theory, and that his petition should state the value of the property at the time of the fire, what pecuniary interest he had in it, and that the loss was due and payable.

We are of the opinion that the case was tried on the wrong theory, and the judgment is accordingly reversed and the cause is remanded for a new trial. All concur.