**BUFFALO INS. CO. OF CITY OF BUFFALO, N. Y., v. BOMMARITO.**

**No. 8729.**

Circuit Court of Appeals, Eighth Circuit.

June 9, 1930.

Thomas B. Harlan, of St. Louis, Mo., for appellant.

Thomas T. Fauntleroy, of St. Louis, Mo. (Abbott, Fauntleroy, Cullen & Edwards, of St. Louis, Mo., on the brief), for appellee.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

Appellee owned a building on ground belonging to another. Appellant issued a policy of fire insurance on this building for a period of three years, beginning February 14, 1925, and extending to February 14, 1928. When the policy was issued appellant knew the building was on leased ground and there was recognition of that fact in the policy itself. The building was totally destroyed by fire June 20, 1927. This action was brought to recover on the policy.

One of the defenses set up by the appellant was stated in its answer thus:

"And defendant further states that the building described in said policy and mentioned in said petition was upon ground leased by plaintiff by an indenture dated June 7, 1915, wherein and whereby Louis Biddle, and others, owners of the fee simple title to the lot on which said insured building stood, did let and demise unto the plaintiff said lot for a term of twelve years commencing April 1, 1915, and ending April 1, 1927; that at the time of the explosion aforesaid said leasehold estate of plaintiff had terminated and all her right, title and interest in and to said building had ceased and at the time of said explosion plaintiff had no right, title or interest to said building or any part thereof or any insurable-interest therein and said policy had become and was void."

It is admitted by appellant that before April 1, 1927, the date of the expiration of the original lease, there was executed a written agreement for the extension of the lease. That agreement was as follows:

"The within lease is hereby extended for a further period of five (5) years, from February 28th, 1927, expiring Feb. 28th, 1932, upon the following conditions and covenants:

"First: That the lessee hereby states that all the rents have been paid up to the first of June, 1925, and that all the taxes, both general and special of every kind, have been paid for the year 1924, and the preceding years, up to December 31st, 1924.

"Second: That the lessee herein will pay when due all taxes, both general and special, that are now due, or may be hereafter assessed against said property, such taxes to include all and any bills for opening, widening or improving streets, alleys, etc.

"Third: That said lessee herein agrees to pay the rental, as hereinbefore in this lease, set forth, when same is due.

"Which covenants and agreements the lessee hereby agrees for herself, her heirs and assigns to faithfully perform."

In the original lease there was no provision for an extension. After the expiration of the original lease and until the time of the fire, tenants of the appellee continued in occupancy of the building covered by the policy.

1. The first contention of the appellant is that the extension agreement was not self-operative; that it contained conditions precedent, compliance with which as consideration for the extension was essential to the effectiveness of the extension; that the burden was upon the appellee to show there had been such compliance; that the appellee made no such showing at the trial; that the appellee had no title to the building unless the extension agreement was in effect; and that having failed to prove title, the appellee proved no insurable interest and a verdict should have been directed for appellant.

If the extension agreement was self-operative, then it is conceded by appellant that its first contention must be resolved against it. It was self-operative unless it contained conditions precedent. If what are said to be conditions precedent in reality are merely covenants or even conditions subsequent, then the extension agreement was self-operative.

A general rule of construction is that in case of doubt as to whether a provision in a lease or an agreement to extend a lease is a covenant or a condition, it is to be construed as a covenant. 18 Corpus Juris, 362;

Columbia, Ry., Gas & Electric Co. v. South Carolina, 261 U. S. 236, 248, 43 S. Ct. 306, 67 L. Ed. 629.

In the light of this rule we examine the extension agreement for the purpose of discovering from all its terms whether it was the intention of the parties that it should not be effective when entered into, but only when the lessee had first complied with the conditions stated. So examining the agreement, we conclude that the parties intended it should be effective on execution. The first clause of the agreement is that "the within lease is hereby extended." The inference arises that the extension is immediately accomplished, not that it is to be deferred until conditions have been complied with. That conclusion is strengthened by consideration of the language used in connection with the so-called first condition. It is, not that the lessee will pay all rents to the first of June, 1925, not that she will pay taxes for the year 1924 and preceding years, but that she states they have been paid. And she does state it, which is a compliance with the condition even if it is a condition precedent.

The second of the so-called conditions, that the lessee "will pay when due all taxes, both general and special, that are now due or may be hereafter assessed against said property," cannot possibly, so far as it relates to taxes later to be assessed throughout the term of the lease as extended, be construed as a condition precedent. To so construe it would be to say that the extension agreement could never become effective until after the term provided in it had expired. And so far as it relates to taxes "that are now due" the parties agreed in the language used in the first of the so-called conditions that such taxes had been paid. Such, at least, we think is the reasonable significance of the language used.

The third of the so-called conditions, that the lessee "agrees to pay the rental when the same is due," is clearly not a condition precedent. If it is a condition precedent, then, as we have said in connection with the second so-called condition, the agreement never would become effective, since the duty to pay rental necessarily would continue throughout the term of the lease as extended.

From the whole extension agreement we conclude that it contains no conditions precedent. What are said to be conditions precedent are but covenants. That that was the understanding of the parties is emphasized by their own characterization of them in the

concluding paragraph of the extension agreement as "covenants and agreements."

█ But if it be conceded that the extension agreement does contain conditions precedent, still there was no error in the refusal of the court below to direct a verdict for appellant. There was testimony that when the fire occurred the appellee owned the building and by her tenants was in possession of it. That was enough to show an insurable interest in appellee. Travis v. Insurance Co., 32 Mo. App. 198, 206; Prichard v. Insurance Co. (Mo. App.) 203 S. W. 223, 225. It did more than raise a vanishing presumption. It was proof of insurable interest. It was not destroyed by appellant's introduction in evidence of the original lease and the showing thereby made that that particular lease expired before the fire. Appellee had proved an insurable interest. It was for the appellant to overcome that proof by showing that appellee did not hold under any lease or effective extension of a lease.

There was no error in the denial of the motion for a directed verdict nor in those portions of the charge to the jury which had to do with the effect of the extension agreement.

█ 2. A second contention of the appellant is that the trial court erred in the charge to the jury as to the measure of damages. The theory of the charge was that the Missouri valued policy statute, section 6229, Rev. St. Mo. 1919, applied. It is urged by the appellant that a building belonging to one upon leased ground belonging to another is not real estate, that section 6229 applies only to insurance on buildings which are real estate, and therefore that it has no application to insurance on property of the kind appellee in this case had.

It is true that a building on leased ground, separately owned, is not always real property. It may be personal property. To such property section 6229, as construed by the Missouri courts, does not apply. Millis v. Insurance Co., 95 Mo. App. 211, 218, 68 S. W. 1066; Sharp v. Insurance Co., 164 Mo. App. 475, 486, 147 S. W. 154.

But the decisions so holding clearly differentiate a building such as the one here, obviously erected as a structure permanently to be affixed to the ground, which could not· be removed without first being wrecked, and which under the lease the lessee could under no circumstances remove without the lessor's consent unless at the expiration of the term, and then only, if all rents and taxes had been paid, and a building erected by a lessee as a mere trade fixture and never intended to be permanently affixed to the soil. Such a building as that here is real property. Mississippi Fire Ins. Co. v. Bank, 138 Miss. 275, 103 So. 84, 85; Orient Insurance Co. v. Parlin Co., 14 Tex. Civ. App. 512, 38 S. W. 60.

The Missouri valued property statute applied in this case, and the charge of the trial court as to the measure of damages was therefore right.

█ 3. It is insisted finally by the appellant that the trial court erred in submitting to the jury the issue of vexatious refusal to pay which resulted in a verdict on that issue in favor of appellee awarding damages in the amount of $500 and as an incident of that award the further amount of $750 as an attorney's fee.

The pertinent Missouri statute, section 6337, Rev. St. Mo. 1919, provides that:

"In any action against any insurance company to recover the amount of any loss under a policy of fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance, if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten per cent. on the amount of the loss and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict."

The fire involved in this case occurred June 20, 1927. It appears that proofs of loss were delivered to the appellant August 13, 1927. By the terms of the policy the loss was not payable for sixty days after the last-mentioned date. The loss should have been paid, unless the appellant was justified in refusing payment, on or before October 13, 1927. The appellant refused to pay and appellee instituted suit March 1, 1928. There had been, therefore, when appellee sued, a delay in payment of approximately five months beyond the time fixed for payment in the contract.

The issue of vexatious refusal to pay should not have been submitted to the jury unless there was some evidence that the refusal to pay was vexatious. The term "vexatious," as used in this connection, has not been clearly defined by the Missouri appel-

late courts. The nearest approach to definition is in Non-Royalty Shoe Co. v. Assurance Co., 277 Mo. 399, 422, 210 S. W. 37, 42, where it is said:

"We are convinced that a vexatious refusal to pay an insurance loss is not to be deduced from the mere fact that upon suit the verdict is adverse to the defendant. Patterson v. Insurance Co., 174 Mo. App. 44, 160 S. W. 59; Keller v. Insurance Co., 198 Mo. 440, 95 S. W. 90. If the fact of an adverse decision is to constitute the sole and decisive test, it would be fairly plain that this court was in error when it held the statute to be constitutional; for it is only upon the fundamental ground of a vexatious refusal to pay that the penalty inflicted by the statute can be upheld. The defendant is to be allowed to entertain an honest difference of opinion as to its liability, or as to the extent of such liability under the contract of insurance, and to litigate that difference; otherwise the provision of the statute is obviously so shot through with duress as to be invalid upon any view. It is from the very nature of the case; and from the protean form which the facts of the case assume, difficult, if not impossible, to frame any general rule for use in determining when a refusal to pay is vexatious and when it is not. Judge Trimble, of the Kansas City Court of Appeals, has announced a rule, which commends itself to us so far as it goes, and it goes as far as it is wise or safe to go in announcing a rule to govern cases wherein the facts are as variant as we find them in insurance cases upon this question. This rule reads thus:

" 'And while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention, is no reason for inflicting the penalty.' Patterson v. American Ins. Co., 174 Mo. App. loc. cit. 44, 160 S. W. 62."

Was the refusal of this appellant to pay "wilful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial"? Was there any evidence supporting the conclusion that the refusal to pay was willful and without reasonable cause?

The appellant refused to pay, so we are justified in concluding from the defenses which it pleaded, because, as it contended, the loss was caused by an explosion not itself caused by fire and because, as it also contended, appellee had no insurable interest in the property when the loss occurred. Did the appellant have knowledge of facts supporting these or either of these defenses at the time it should have paid but did not pay the loss or at any time before appellee instituted suit? What facts were developed at the trial does not affect the matter, either for appellant or against it. A refusal to pay when payment is due is not a vexatious refusal if founded on what at the time appeared to be facts justifying the refusal even though at the trial it may be shown that the true facts were exactly the opposite of what at first they appeared. Conversely a refusal to pay is vexatious if founded not upon what appear to be facts but only on a possibility that later investigation may develop facts justifying refusal to pay, even if such further investigation does develop such facts. The facts as developed may defeat recovery altogether, and if so, of course, they will incidentally defeat recovery of damages for vexatious refusal to pay; but if an insurance company desires to defeat recovery of damages for vexatious refusal to pay even although it may fail to defeat recovery on the contract of insurance, it must show that at the time it should have paid under the contracts the facts as they then appeared justified that refusal.

Now in this case at the trial on April 24, 1929, the appellant produced some testimony from which an inference might have been drawn that the loss was caused by an explosion not preceded by fire but there was not a particle of evidence that on October 13, 1927, or at any time before suit was instituted on March 1, 1928, the appellant was in possession of this testimony. Also at the trial the appellant produced some testimony from which, if it stood alone, an inference might have been drawn that at the time of the fire appellee had no insurable interest in the property destroyed; but here again there was no showing as to when this testimony was first known to appellant. So there was no proof that when payment was refused that refusal was justified by any facts then appearing to appellant. Hence it was proper to submit the issue of vexatious refusal to the jury.

Moreover, another and quite sufficient reason appears for affirming the judgment below so far as this matter is concerned. That reason is this: After the trial court

58

charged the jury on the issue of vexatious refusal no exception was saved either to that part of the charge nor to the submission of that issue. That part of the charge is not criticized even on appeal by appellant, although in one particular it does not appear to us to have been precisely correct.[1] At no time was the error now alleged called sharply to the attention of the court below. No exception in any way involving or including it was saved, except as it may be said to have been included in the exception to the court's refusal to direct a verdict for the defendant as to the whole case. Did that exception include this alleged error?

We think it did not. The motion for a directed verdict as to the whole case only presented the question as to whether there was any substantial evidence supporting appellee's claim on the contract of insurance. Appellee's claim for damages for vexatious refusal was not based on the contract. It came into existence by virtue of the statute and only after her claim on the contract was established. Overruling the motion for a directed verdict certainly was not a ruling that there was not only some substantial evidence supporting appellee's claim on the contract, but also that there was some substantial evidence of vexatious refusal to pay under the statute. Therefore, an exception to that ruling did not save this point.

In any event, the alleged error was not sharply called to the court's attention as the law requires. Wear v. Imperial Window Glass Co. (8 C. C. A.) 224 F. 60, 63. And if in legal theory it was called to the court's attention as something involved, although hidden, in the motion for a directed verdict it was abandoned by the failure to except to the submission of the issue in the charge. Compare Cochran et al. v. United States (8 C. C. A.) 41 F.(2d) 193, at page 207, decided May 5, 1930.

4. Beyond the matters we have discussed others incidentally are suggested. We have considered them but find no prejudicial error.

The judgment is affirmed.

VAN VALKENBURGH, Circuit Judge, concurs in the result.

---

[1] The statute provides that damages for vexatious refusal shall not "exceed ten per cent. on the amount of the loss." The charge here was that the amount of damages, if any, should be 10 per cent.