**FIREMEN'S INS. CO. OF NEWARK, N. J.**
**v. SMITH et al.**

No. 496.

United States District Court
W. D. Missouri, St. Joseph Division.
April 18, 1949.

Clausen, Hirsh & Miller, of Chicago, Ill., and Ronald S. Reed, of St. Joseph, Mo., for plaintiff.

Lewis F. Randolph and Stanley I. Dale, both of St. Joseph, Mo., for defendants.

DUNCAN, District Judge.

Plaintiff filed its complaint for a declaratory judgment in this court on December 8, 1948 and an amended complaint on March 16, 1949 under the Declaratory Judgments Act, 28 U.S.C.A. Chapter 151, §§ 2201–2202 to determine its liability under two policies of insurance issued by it, No. OC 7668 and No. OC 7669, insuring certain property owned by the defendants.

Prior to the institution of this suit, the defendants had filed a suit in the State court seeking to recover on policy No. OC 7669, issued by the plaintiff in the sum of $2500. A few days after the filing of this suit for a declaratory judgment, the defendants also filed another action in the State court based on policy No. OC 7668, issued by the plaintiff in the sum of $5000.

The suit involving policy No. OC 7668 was removed to the United States District Court and is pending at the present time. The plaintiff has sought to enjoin the defendants from prosecuting their suit in the State court. Upon a preliminary hearing, the court declined to enjoin the prosecution of that case, and determined to try this declaratory judgment action first, as it was filed prior to the suit removed to the District Court.

The court also declined to determine the validity of the $2500 policy, No. OC 7669 involved in the suit in the State court, and dismissed Count II of the amended complaint for a declaratory judgment, which count embodied that policy.

The policy remaining under consideration, No. OC 7668, provides among other things that the plaintiff shall insure defendants against all direct loss by fire to the property described in that policy of insurance, for a period from March 11, 1947 to March 11, 1948 in the amount of $5000. The policy also provides:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein or in case of any false swearing by the insured relating thereto."

"This entire policy shall be void if, whether before or after the loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof. * * *"

The policy further provides:

"Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring:

"(a) while the hazard is increased by any means within the control or knowledge of the insured; or * * *."

The policy also contained a provision that the property was to be occupied and used as a restaurant and dwelling. In that respect the plaintiff alleges that the defendants fraudulently misrepresented to the plaintiff that the property was to be so used, when in truth and in fact the property was to be occupied and used as a gambling establishment, contrary to the laws of the State of Missouri.

On April 7, 1947 a fire occurred in which the insured property was totally and completely destroyed. At that time it was closed for business purposes and was not occupied even as a residence. A provision in the policy authorized the property to remain vacant for a period of 60 days, and the question of its non-occupancy at the time of the fire is not now in controversy.

The plaintiff further alleges that the concealment by the defendants of the purposes for which the property was being used was fraudulent and therefore rendered the policy void; that the fire was of incendiary origin, which fact was well known to the defendants; that in the proof of loss the defendants wilfully concealed or misrepresented the origin of the fire, thus rendering the policy void under its provisions; and, that the use of the premises for gambling and the illegal sale of liquor increased the hazard, likewise rendering the policy void.

The Mechanics Bank of St. Joseph, Missouri had loaned the sum of $4000.00 to the defendants, secured by a mortgage on the insured property. Under a Standard Mortgage Clause in the policy, the amount of the mortgage, in so far as its liability against the policy in controversy was concerned was paid to the bank in the amount

of $1128.89, and the company in its complaint sought to be subrogated to the rights of the mortgagee.

Neither the plaintiff nor the defendants requested a jury as required by Rule 38(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Prior to the time the case was called for trial, the court advised the parties that the court would, of its own motion, call a jury to try and determine such disputed facts as might arise during the trial.

The defendants had occupied the property for a considerable period of time. It was located outside the city limits of St. Joseph, Missouri, and the defendants occupied an apartment on the second floor of the building for living quarters. The first floor was used as a restaurant and for gambling. The premises consisted of a bar, a kitchen, toilets, the above mentioned apartment, and what was referred to occasionally during the trial as a "casino." This "casino" was a large room attached to, and actually a part of the main structure of the building.

At the time of the issuance of the policy, and for some time prior thereto, this room contained various types of gambling equipment, including a large crap table, a roulette wheel and several other gambling devices. There was also a bar in the "casino" or gambling room.

Since the building was outside the city limits of St. Joseph, a liquor license was not obtainable. The defendants admitted that at various times during the conduct of their business, they engaged in gambling and the illegal sale of intoxicating liquor on the premises. Gambling and the sale of intoxicating liquor took place at such times as the proprietor felt safe from molestation by the authorities. This practice had been in progress long before the issuance of the policy in controversy.

The plaintiff denied any knowledge of the gambling or of the illegal sale of liquor and introduced in evidence testimony tending to show that it would not have issued its policy of insurance on said property had it known of the use to which it was being put.

The evidence showed that prior to March 11, 1947 the property had been insured by another company, and that the policies issued by that company were cancelled prior to that date; that the policies were in the possession of the Mechanics Bank as mortgagee; that upon receipt of notice of intention to cancel said policies, a representative of the bank communicated with the defendant A. Walter Smith, and advised him that he thought he could get some other insurance for him; that the representative of the bank called the agent of the plaintiff, and discussed the matter with him or his office assistant; that pursuant to said discussion, the plaintiff's agent came to the bank and was told by the bank's representative to write the insurance; and, that the agent picked up the old policies of insurance which were in the possession of the bank, and was told by the bank's representative (according to plaintiff's testimony, which was not denied by the representative of the bank) to "copy the old policies." In all probability the agent was also told at that time that the property was being occupied as a restaurant and as a residence.

Within due time the policies were issued by the plaintiff and delivered to the bank. They were exact copies of the cancelled policies, in so far as information concerning the use and occupancy of the premises were concerned. The defendants and another witness testified that prior to the issuance of the policies, the agent of the company came to the premises and made a thorough inspection of them; that he was in the room used as a gambling room; that he was in the upstairs portion of the property; that he was either leaning on the crap table or the bar at the time the discussion with respect to the issuance of the policies was being carried on; and that thereafter the policies were issued.

The evidence also showed that the defendants cancelled other policies of insurance on their automobile, another piece of real estate, and possibly on other property, for the purpose of giving the business to the plaintiff's agent. The plaintiff's agent denied that he was on the premises or that he made an inspection thereof prior to the issuance of the policies, or that he had any knowledge of the gambling or the illegal sale of liquor.

At the close of the evidence, the court submitted three interrogatories to the jury, which (omitting caption) were:

"Special Interrogatories Impounded by the Court to the Jury:

"Do you find from the evidence that the use of the insured premises for gambling and the illegal sale of intoxicating liquor or either of them, increased the hazards of destruction by fire of the insured premises?

"Do you find from the evidence that C. M. White, the agent of the Company, personally inspected the premises prior to the issuance of the policy of insurance sued on?

"If your answer to the last interrogatory be 'Yes' was there present on the premises at the time of such inspection, evidences of gambling and the illegal sales of liquor, or of either of them, which were obvious or apparent to the said White?"

The Court fully instructed the jury as to the law in the case, in so far as it was necessary to answer the interrogatories. The jury answered the first interrogatory in the negative; the second and third interrogatories in the affirmative. The court considered these findings of fact as advisory and following the verdict of the jury, took the case under advisement for determination of other questions of fact and law.

In the prayer of its complaint, the plaintiff asks:

"1. That the Court adjudge and declare that the plaintiff is not liable to the defendants for any loss or damage by fire to the building insured under its policy No. OC 7668 occurring on or about the 7th day of April, 1947; * * *

"3. That policy No. OC 7668, issued by the plaintiff to the defendants, be delivered up and cancelled and declared null and void and of no effect; * * *

"5. That the defendants and all persons claiming by or through them be restrained from maintaining any action against the plaintiff for the recovery of the amount of said policy No. OC 7668, or any part thereof; * * *

"7. That the Court adjudge and declare that the plaintiff has a valid and enforceable claim against the defendants to the extent of the sum paid by plaintiff to the mortgage pursuant to the terms and provisions of the Standard Mortgage Clause attached to policy No. OC 7668;

"8. That the plaintiff may have such other determinations and declarations as the Court may deem necessary and proper; and,

"9. That the plaintiff may recover its costs."

In their answer, the defendants filed a counterclaim in which they seek to recover the face value of the policy, interest, damages for vexatious delay in the sum of 10%, and an attorney's fee of $500.

■ There was sufficient evidence to support the findings of the jury with respect to the controverted facts submitted in the interrogatories, and the court is therefore bound by the finding of the jury that the use of the insured premises for gambling and for the illegal sale of intoxicating liquor or either of them, did not increase the hazard of fire under the terms of the policy. Dickinson et al. v. General Accident Fire & Life Ass'n Corp. Ltd., 9 Cir., 147 F.2d 396.

■ If the use to which the property was being put was different from that specified in the policy, but such different use did not increase the hazard of fire, then the policy is not void under the laws of Missouri. See R.S.Mo.1939, §§ 5934, 5935, Mo. R.S.A. §§ 5934, 5935.

■ On this finding alone, the court would be required to hold the policy valid. But, the court submitted to the jury the further question as to whether or not the agent had actual knowledge of the use of the premises for gambling and the illegal sale of liquor prior to the issuance of the policies. In their answers to the interrogatories, the jury found that the agent inspected the premises prior to the issuance of the policies, and that evidence of the use of the premises for gambling and the illegal sale of liquor were obvious to the agent at that time.

■ If the agent had such knowledge, then issuance of the policy would be a waiver of the conditions, even if material to the risk. Ward v. Iowa State Ins. Co., Mo.App., 4 S.W.2d 895; Scarritt Estate

Co. v. Casualty Co., of America, 166 Mo. App. 567, 149 S.W. 1049; Reithmuller v. Fire Ass'n of Philadelphia, 38 Mo.App. 118.

▮ Plaintiff contends that the defendants knowingly and wilfully misrepresented the facts with respect to the use of the premises in the execution of a proof of loss. The proof of loss stated that the property was used as a restaurant and as a residence, as defined in the policy. It is the opinion of the court that such a misrepresentation is not a material one and does not avoid the policy. If the insured had sworn falsely as to the value of the property or as to the extent of the loss—something that would have affected the amount of the recovery—then the court would be inclined to view the matter as of greater importance. But, the property was completely destroyed, and at the time of its destruction was not being used for any purpose. The evidence showed that the defendants had moved out of the property that day, or a day or two before, to occupy another building a few blocks away. For a period of two weeks the insured premises had been undergoing renovation and reconstruction and were to be occupied by the brother of the defendant A. Walter Smith.

In view of the findings of the jury and of the conclusions of the court with respect to the execution of the Proof of Loss, the court must conclude that the policies were valid and that the plaintiff is liable to the defendants for the damage resulting from the fire.

▮ At the time the original complaint was filed, the property had been destroyed and the plaintiff had denied liability. There was therefore present an actual controversy as required by the Declaratory Judgments Act, supra. The court having assumed jurisdiction, it is the duty of the court to determine all the issues as between the parties and to make a full and complete disposition of the entire case. Tennessee Coal, Iron & R. Co., v. Muscoda Local No. 123, etc., 5 Cir., 1943, 137 F.2d 176, affirmed 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014; Koon v. Bottolfsen, D.C., 60 F.Supp. 316; Home Ins. Co. of New York v. Trotter, 8 Cir., 130 F. 2d 800.

Having thus determined the validity of the policies and the liability of the plaintiff for the payment thereof, the question now presents itself as to whether or not the court, under the evidence and pleadings, should impose a penalty for vexatious refusal to pay the loss. The question must be stated: Did the plaintiff insurer have reasonable grounds for denying liability? In its complaint, the plaintiff alleges: "That, after the said fire complained of, the defendants did, on, to-wit, the 2d day of June, A.D. 1947, render a certain document, purporting to be a Proof of Loss, to the plaintiff, signed and sworn to by the defendants and did therein falsely and fraudulently swear that, since plaintiff's policy of insurance was acquired by them, there had been no change in the use, occupancy or exposure of the property described in said policy of insurance, whereas, in truth and in fact as the defendants well knew, the building insured had been in effect closed, on, to-wit, March 22, 1947, by order of the civil authorities of the State of Missouri because of violation by defendants of the laws of the State of Missouri, or had been in effect closed as a direct result of a raid upon the premises insured by the civil authorities of the State of Missouri for violation of the laws of the State of Missouri pertaining to the operation of illegal gambling establishments, and possession of gambling equipment, and the illegal sale and dispensing of intoxicating liquors without a license;"

The plaintiff contended at the trial that the hazard was increased because gambling and the illegal sale of liquor naturally attracted lawless elements and that contending elements would probably seek to "muscle in" for gambling privileges. Also, the plaintiff contended that those who were disgruntled or who had lost while gambling on the premises might be inclined to retaliate by the destruction of the premises.

These questions were submitted to the jury, and the jury found that the risk was not thereby increased. The insured premises, according to the evidence, were primarily an eating place, and gambling was a sideline, carried on when the proprietor felt reasonably safe in so doing.

The jury has found in its answers to the second and third interrogatories that the property was being operated as a gambling establishment and that intoxicating liquor was being sold in violation of existing laws. A raid, evidence of which was introduced at the trial, occurred on the 22d day of March, 1947—15 days before the fire occurred. This raid, according to testimony, resulted in wide publicity in the newspapers. Some other like places, designated as roadhouses and taverns, were raided on the same night as a result of organized law enforcement activity on the part of the Missouri State Highway Patrol.

After the raid, the insured property was closed for all purposes. Notwithstanding that fact, the policies were not cancelled during that fifteen day period, but remained in full force and effect.

It is further alleged by the plaintiff that the defendants did "falsely, fraudulently, and wilfully conceal the fact, as the said defendants then and there well knew, that the cause and origin of the said loss was incendiary." Although this allegation appears in the plaintiff's amended complaint, and references were made by plaintiff's counsel to this allegation in their opening statement, there was no evidence of any kind indicating the truth of such an allegation of arson or incendiarism. In fact the assistant Chief of the Fire Department of St. Joseph, Missouri, who was present at the fire and who testified on behalf of the plaintiff, testified that he saw no evidence of incendiarism. As a matter of record, there was no proof of any kind or character showing the origin or the nature of the fire, except that it occurred at approximately 2:30 a. m.

So, from the evidence, plaintiff's allegations of incendiarism are not borne out. Actual information concerning an attempted destruction of the property by the defendants, so far as the record shows, was never presented to the insurer. Mere suspicion that the origin of a fire is of an incendiary nature, without any substantial facts on which to base that suspicion, will not justify an insurer in refusing to pay the loss. If such refusal or delay is based on such suspicion alone, then such delay is vexatious within the meaning of Section 6040, Mo.R.S.1939, Mo.R.S.A. § 6040. See Buffalo Ins. Co. of City of Buffalo, New York v. Bommarito, 8 Cir., 42 F.2d 53, 70 A.L.R. 1211.

Apparently a long period of negotiation ensued between the date of the fire and the original suit. The fire occurred on April 7, 1947. The suit on policy No. OC 7669 in the State court was filed on November 5, 1948. The declaratory judgment action was instituted in the United States District Court on December 8, 1948. The suit on policy No. OC 7668 was filed in the State court on January 31, 1949 and removed into the United States District Court on the 21st of February, 1949. If the insurer felt secure in its position regarding possible incendiarism, which controversy must have arisen within a comparatively short time after the loss occurred and investigation made, it certainly did not show confidence in its claim by deferring any action to avoid the policies for a period of approximately nineteen months.

In view of the jury's findings and the failure of the evidence to reveal any suggestion of incendiarism, the court can come to but one conclusion, and that is that the defendants are entitled to recover for vexatious refusal to pay and for an attorney's fee in the amount prayed for in the counterclaim.

It is therefore the conclusion of the court that the defendants are entitled to recover of the plaintiff the face value of the policy, No. OC 7668, less the sum of $1,128.89 paid to the mortgagee, with interest at the rate of 6% per annum from the 2d day of June, 1947 together with the sum of 10% penalty for vexatious refusal to pay, and the sum of $500 attorney's fee and their costs herein expended.

It is so ordered.

If the parties desire, they may submit findings of fact, conclusions of law and judgment to the court, in accordance with this opinion.