## AMERICAN CENT. INS. CO. v. WISE.
### (No. 7107.)

Court of Civil Appeals of Texas. Austin.
May 11, 1927.

Rehearing Denied June 8, 1927.

1. Insurance ⚍389(1)—Insurance company waived defenses under provisions rendering policy void, where agent knew prohibited conditions existed when he wrote policy.

Insurance company have waived defenses under fire insurance policy, based on the existence of facts which under the provisions of the policy would render it void, where the soliciting agent knew of the existence of these facts when he issued the policy.

2. Insurance ⚍136(5)—Where insured treated fire policy as binding, delivery held complete, though insured first read policy after fire.

Where the insured consistently treated fire insurance policy as binding, liability of the company was not defeated on the ground of nondelivery, because the insured received the envelope containing the policy the day before the fire and did not know its contents until after the fire.

3. Insurance ⚍668(6)—Failure of insured, insuring building for $3,000, to disclose its purchase for $900, held not to invalidate policy as matter of law.

Where insurance agent, when issuing $3,000 policy of fire insurance, made no inquiry as to the price the insured had paid for the building insured, policy *held* not invalidated as matter of law because the insured did not disclose that he had bought the building for only $900.

4. Insurance ⚍500—Building, bought only to be razed for salvage, held "personal property" within statute making three-fourths loss clause in policy applicable (Rev. St. 1925, art. 4929).

Under Rev. St. 1925, art. 4929, providing that, in case of total loss, a fire insurance policy shall be considered liquidated demand for the full amount of the policy unless the property covered is personal property, a building bought only for the purpose of salvage and never intended to be used as a building, the purchaser having no title or interest in the ground on which it was located, *held* "personal property" and the three-fourths loss clause in the policy was applicable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Personal Property.]

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Action by J. W. Wise against American Central Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

E. G. Senter, of Dallas, for appellant.
Critz & Woodward, of Coleman, for appellee.

McCLENDON, C. J. In a trial to the court without a jury, J. W. Wise, the appellee, recovered against American Central Insurance Company, the appellant (which we will call the American Company), a judgment for $3,000, the full amount of a fire insurance policy covering a school building near Rockwood, in Coleman county. The insurance company has appealed.

From the undisputed evidence and the findings of the court on controverted issues, we make the following statement:

The building covered by the policy was a one-story, weather-boarded, frame structure, originally of four rooms and a hall, to which two additional rooms were added in 1919; the main part of the structure having been built many years before. On July 20, 1925, it was owned by the Rockwood independent school district. The district had issued bonds for the erection of a new building, and on the above date sold the old building to Wise for $900, represented by two promissory notes of $450 each. At the time of the sale, there was a $5,000 fire policy in the Republic Company covering the building and its contents, $4,000 of which was on the building alone. Baxter was local agent at Coleman for both the Republic and the American Companies, with power to write and deliver policies. Under the sale from the school district to Wise, it was agreed that the Republic policy, in so far as it covered the building, should be transferred to Wise, and that, if that could not be effected, the policy was to be canceled and the return premium applied on other insurance in favor of Wise. It was also a part of the agreement that Wise was to remove the building from the school property as soon as possible and not later than September 1, 1925. Baxter was notified of the arrangement with Wise, and was requested to transfer the Republic policy accordingly. He wrote at once to the general agents of that company, making request for such transfer, and on July 22d received reply that the company did not care to carry the risk, and he was instructed to cancel the policy. This he did by notation on his records, as the policy had been mislaid and could not be found. On that date he issued and mailed the policy in suit to Wise, and telephoned him that he had done so. This policy was received by Wise on the afternoon or evening of July 23d, but he did not open the envelope inclosing it until after the fire. The total premium on this policy was $54. The return premium on the Republic policy was $48.69, with which amount Baxter credited Wise on the American premium. The building was totally destroyed by fire on the morning of July 24, 1925. The uncontradicted evidence shows that Wise purchased the building for the sole purpose of tearing it down and using the lumber in building construction and repairs on his farm, and disposing of any surplus by sale. Under

⚍For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

his agreement with the school board, he had no interest in or right to use the real estate whatever, except that necessarily incident to tearing down and removing the building.

Baxter had previously inspected the building, and was fully advised with reference to the title to it and to the real estate on which it was situated, and the agreement between the trustees and Wise, except that Wise did not inform him as to the amount he had paid for the building. He fixed the amount of the American policy in accordance with what he thought the building was worth. But he testified that he would not have issued the policy for $3,000 had he known that Wise paid only $900 for the building. Appellant company was represented by general agents at Houston, to whom Baxter reported the writing of the policy on the day it was written, and to whom he also promptly reported the fire. A few days later he received under one enclosure two letters from the general agents, one of which declined the risk, and asked that the policy be canceled, and the other acknowledged notice of the fire and stated that the matter had been referred to the adjuster. Senator Senter went to Rockwood a few days after the fire, in the interest of the Republic Company, and made a thorough investigation, and ascertained all the facts in connection with the sale to Wise, cancellation of the Republic policy, and writing the American policy. At that time he took a full statement from Wise with reference to the latter policy, and stated to him that, while he did not then represent the American Company the matter would be referred to him. He then called the general agents on the telephone, reported the result of his investigation, and was authorized to represent the American Company in connection with the loss. He then went to Baxter, informed him of this telephone conversation, and stated that the company would deny liability on the policy. About 30 days after the fire, the general agents sent a statement to Baxter of his account with them, listing the Wise policy, and "billing the said agent for the remainder of the premium thereon, and stating said total premium at $54. In pursuance of this statement and "billing," Baxter collected from Wise the $5.31 balance of premium after crediting him with the $48.69 return premium on the Republic policy. Neither appellant nor its agents made any offer to return the premium to Wise until during the trial of the case, when the offer was made to the attorneys for Wise, and was declined.

Appellant presents twelve propositions under fifteen assignments of error, a number of which are manifestly without merit and need not be considered in detail. The contentions which we think worthy of mention may be reduced to four: (1) That there was no delivery of the policy to Wise, because he did not know its contents until after the fire; (2) that under the circumstances Baxter was the agent of Wise and not of appellant, and the latter, therefore, was not bound by the policy, as its general agents declined the risk; (3) that Wise was guilty of fraud vitiating the policy, in not disclosing to Baxter the amount he had paid for the building; and (4) that the property insured was personal property within the meaning of Revised Statutes 1925, art. 4929, known as the valued policy statute; and therefore the policy was not a liquidated demand for the full amount thereof but the amount of recovery was to be determined by the actual value of the property insured and application of the three-fourths value clause in the policy.

[1] There are a number of urged defenses to the policy, based upon provisions rendering it void in the event of the existence of certain stated facts. We do not mention these specific defenses, for the reason that the facts upon which they are based were in existence at the time the policy was written and were all known to Baxter. To sustain these defenses, the policy must be held void ab initio. Under the holding in Ins. Co. v. Mazoch Bros. (Tex. Civ. App.) 291 S. W. 257, and authorities there cited, these defenses were waived if Baxter was agent for appellant. If he was not the agent, then the policy never took effect.

[2] The fact that Wise did not know the contents of the policy until after the fire did not show a want of its complete delivery. Appellant, through its agent Baxter had done everything required of it to complete delivery, and it had come into the actual possession of Wise, who had had every opportunity to read it and discover its contents. He knew a policy had been written and mailed him, covering the property in question, and knew, when he received the envelope containing it, that it was the policy Baxter had mailed him. He never made any objection or protest in connection with the policy, but consistently relied upon it as binding both upon himself and appellant. Under the circumstances, the latter is not in position to defeat liability on the ground of its nondelivery.

It is undisputed that Baxter was local agent in Coleman county for appellant, and had authority generally to write the policy and bind the company by its delivery. The evidence was clearly sufficient to warrant the finding of the trial court that he acted in this particular instance in his capacity as agent for appellant and not as agent for Wise, and that there was no collusion between Wise and Baxter.

[3] Nor do we think the evidence warrants the conclusion as a matter of law that the failure to disclose the amount he paid for the building constituted a fraud on appellant that would vitiate the policy. Wise made no written application, nor did he make any verbal representation to Baxter with reference to the value of the property or what he had paid for it. Baxter knew that he had bought the

building only from the trustees and was required to remove it, and Wise told him that he intended to remove it. There is no intimation that Baxter made any inquiry with reference to the purchase price, and the record wholly fails to disclose any act or word of Wise that would mislead Baxter in this regard. The plea of fraud rests alone upon Baxter's silence with reference to what he had paid for the property, and we are clear in the view that such silence alone did not constitute fraud as a matter of law. We overrule this contention.

[4] We sustain the third proposition above, that under the circumstances of this case the building was personal property and not real estate, within the meaning of the valued policy statute, and that therefore the three-fourths loss clause in the policy applied, and the amount of the loss is limited to the actual value of the property at the time of the fire.

So far as we have been able to ascertain, the question presented by the peculiar state of facts at bar is one of first impression.

The cases upon which appellee relies in his contention that the property is not personalty within the meaning of the valued policy statute are Insurance Co. v. Parlin-Orendorff Co., 14 Tex. Civ. App. 512, 38 S. W. 60, and Ins. Co. v. O'Bannon (Tex. Civ. App.) 178 S. W. 731. In the first of these cases, which was decided in 1896 by the Dallas court, and in which writ of error was denied, it was held that a building upon leased ground, with privilege in the owner to remove it at the expiration of the lease, was not personalty within the meaning of this statute. In the O'Bannon Case, decided in 1915 by the Texarkana court, this rule was extended to a building upon ground which the owner had sold, with the privilege of removing the building within a short period of time to other ground which he owned. The amount of the policy in that case was not within the jurisdiction of the Supreme Court. In a very well-considered opinion by the Supreme Court of Nebraska, decided in December, 1925, the holding in the Parlin Case was followed. Calnon v. Insurance Co., 206 N. W. 765. Two cases by the Missouri intermediate appellate courts have reached a contrary holding. Millis v. Ins. Co., 95 Mo. App. 211, 68 S. W. 1066; Sharp v. Ins. Co., 164 Mo. App. 475, 147 S. W. 154.

Where a building owned by one party is upon ground owned by another, and the owner of the building has the privilege of removing it at the termination of his right of possession of the ground on which it is situated, the general rule is that the building is personalty and not realty. The holdings in the Parlin and Calnon Cases are rested upon the proposition that the expression "personalty property" in the valued policy statutes is not used in its technical legal sense, but is to be given its general, or popular meaning, and, where the property insured consists of a building which the owner has title to and the right to use as such in connection with the ground upon which it is situated, it is for all practical purposes realty and not personalty. In the Parlin Case an analogy is drawn from the decision in homestead cases which hold that the homestead right, although pertinent only to real estate, attaches to buildings, machinery, etc., upon land in which the head of the family has only a leasehold interest, and is exempt from execution.

The following from the Parlin Case is quoted with approval in the Calnon and O'Bannon cases:

"But it is insisted that here the house was personal property, and is excluded by the terms of the statute. 'Personal,' in its general sense, means simply 'movable,' 'transitory'; 'personal property,' that which may be carried about with the person. It has reference to the real character of the property, and not to the title by which it is held. In this sense, a dwelling house is not embraced within the meaning of the term 'personal property.' To give the statutory term its general signification, the object of the statute will be accomplished; to give its technical legal sense, the evil intended to be remedied will, in part, still prevail, and without any good reason to support it. We are of opinion that the statute should be construed to embrace houses without reference to the question of the fee-simple title to the land."

In both the Parlin and Calnon Cases the court arrive at the conclusion by interpretation of the legislative intent. We quote the following from the Parlin Case:

"Houses for residence and business purposes, constructed of the various different materials, is the character of real property which was usually insured. What was wrong with the arbitration clause in the insurance policy upon a house? A house, unlike a stock of merchandise and other personal property, the value and quantity of which is so variable, is of a permanent nature, and is open to easy inspection and reasonably accurate estimate as to value. The premium charged for insurance is proportioned to the value of the property insured. It would not be just for a company to collect premiums upon a high valuation, and pay losses on a lower valuation. As the value of the house may be easily ascertained by the insurer, and overvaluation readily prevented by inspection, our Legislature fell upon the plan of preventing the wrong indicated by requiring that the value named in the policy should be treated as the true value in the payment of losses. Here we see the evil and the remedy."

The same reasoning was applied in the O'Bannon Case to a building which was to be removed within a very brief period to another site.

In each of these cases the building was either being used or was intended to be used as a building upon the premises upon which it was then located, or upon other premises to which it was to be shortly removed. Its character, therefore, as a building, was not affect-

ed by the title to the ground upon which it was located. The facts in those cases clearly distinguish them from the case before us. Here Wise had no title to or interest in the ground on which the building was located. He had no right to use the building as such upon that ground. He had no intention of ever using the building as a building. He purchased it, not as a building, but for the salvage it contained. He intended, weather permitting, to begin tearing it down on the following Monday after he bought it, and had made arrangements to that end. The property had no value to him whatever as a structure, and the labor item in its construction was a total loss to him; it was without value to him except as lumber or other salvage, and did not partake of the nature of real estate in any sense in which that term may be applied, whether technically, generally, popularly, or otherwise.

We can reach no other conclusion than that the building under the sale to Wise and under his admitted purpose to immediately tear it down and make use of it only as old lumber, was personal property within both the letter and the spirit of the valued policy statute, and the measure of damages must be determined accordingly.

The judgment of the trial court is reversed, and the cause remanded.

Reversed and remanded.