

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

August 20, 2003

The Honorable James L. Anderson, Jr.
Aransas County Attorney
301 North Live Oak Street
Rockport, Texas 78382

Opinion No. GA-0090

Re: Whether a county commissioner may lease real property from the county (RQ-0019-GA)

Dear Mr. Anderson:

You ask several questions about whether an Aransas County Commissioner may lease real property from Aransas County. These questions seek to clarify the relationship between the statutory oath of office for county judges and commissioners in section 81.002 of the Local Government Code, which prohibits a county judge or commissioner from having an interest in a contract with the county, and chapter 171 of the Local Government Code, which regulates the conflicts of interests of local public officials, including county judges and commissioners.

## I.    Background

You explain that Aransas County owns the Aransas County Airport, which includes twenty-two small houses that the federal government built during World War II. In the mid-1960s, the county sold twenty of the houses to a private company and also leased the real property underlying the houses to the company. In 1986, the commissioners court extended the lease and approved its transfer from the private company to D. R. Adams and Byron Hailey, who also purchased the twenty houses. In 1992, after Mr. Hailey died, Mr. Adams became the sole owner of the twenty houses and the sole lessee under the lease, and the commissioners court approved the transfer of Mr. Hailey's interest in the lease to Mr. Adams. In 1996, the commissioners court extended the lease until December 31, 2002. The county sold the two remaining houses to Mr. Adams in 1997 and also leased to him the underlying land.[1]

In September 2002, the commissioners court approved a five-year lease extension for the land underlying all twenty-two houses beginning on January 1, 2003 and authorized the county judge to sign it. In the fall of 2002, Mr. Adams was elected to the office of Aransas County Commissioner Precinct #3. He took the oath of office and was sworn in on January 1, 2003. Because it took some time for the county surveyor to prepare a new survey of the property, the county attorney's office did not prepare a new lease until after January 1, 2003. To date, Mr. Adams has made lease payments

---

[1]See Letter from Honorable James L. Anderson, Jr., Aransas County Attorney, to Honorable Greg Abbott, Texas Attorney General, at 1-2 (Feb. 14, 2003) (on file with Opinion Committee) [hereinafter Request Letter].

under the new proposed lease but neither the county judge nor Mr. Adams has signed it. *See* Request Letter, *supra* note 1, at 2.

In light of this situation, you ask whether "Aransas County, acting through its County Judge and being duly authorized by the Commissioners Court, [may] execute a lease to Danny Adams, County Commissioner of Precinct #3 covering real property located at the Aransas County Airport and owned by Aransas County." *Id.* at 2. You also ask whether Mr. Adams may "enter into a lease agreement with Aransas County . . . without violating his oath taken under [section] 81.002 of the Local Government Code." *Id.* at 2-3. Finally, you ask, "Does Chapter 171 of the Local Government Code supersede or repeal the requirements of [section] 81.002 in regards to the fact situation stated herein in spite of the specific ruling by the Attorney General in Opinion JM-855?" *Id.* at 3.

## II.    Legal Framework

### A.    The Two Applicable Statutes

Section 81.002 of the Local Government Code requires a county judge or county commissioner to "take the official oath and swear in writing that the person will not be interested, directly or indirectly, in a contract with or claim against the county except: (1) a contract or claim expressly authorized by law; or (2) a warrant issued to the judge or commissioner as a fee of office." TEX. LOC. GOV'T CODE ANN. § 81.002 (Vernon Supp. 2003). The section 81.002 oath of office provision incorporates the strict common-law prohibition against conflicts of interest. *See Bexar County v. Wentworth*, 378 S.W.2d 126 (Tex. Civ. App.–San Antonio 1964, writ ref'd n.r.e.). A commissioner who contracts with the county violates this oath and, moreover, under the common law, the contract violates public policy and is null and void. *See id.*; *see also Starr County v. Guerra*, 297 S.W.2d 379, 380 (Tex. Civ. App.–San Antonio 1956, no writ) (commissioners court's employment of members of the court held "contrary to the policy of the law" and to "the oath each commissioner must take").

Local Government Code chapter 171, on the other hand, regulates conflicts of interests involving local public officials, including county commissioners and judges. *See* TEX. LOC. GOV'T CODE ANN. ch. 171 (Vernon 1999); *see also id.* § 171.001(1) ("local public official" includes a member of the governing body of a county). Significantly, it "preempts the common law of conflict of interests as applied to local public officials." *Id.* § 171.007(a). Thus, it repeals the common-law rule that until 1984[2] barred local governmental bodies from contracting with a business entity in which a member of the governmental body had a personal economic interest and made such contracts void. *See City of Edinburg v. Ellis*, 59 S.W.2d 99 (Tex. Comm'n App. 1933, holding approved); *Delta Elec. Constr. Co. v. City of San Antonio*, 437 S.W.2d 602 (Tex. Civ. App.–San Antonio 1969, writ ref'd n.r.e.); *Meyers v. Walker*, 276 S.W. 305, 307 (Tex. Civ. App.–Eastland 1925, no writ) (holding public contract invalid because a member of the contracting governmental body had a personal economic interest in it).

Rather than prohibit a governing body from taking an action affecting the interests of one of its members, chapter 171 prohibits the local public official who has a "substantial interest" in a

---

[2]The predecessor of Local Government Code chapter 171 was adopted in 1983 and became effective on January 1, 1984. *See* Act of May 30, 1983, 68th Leg., R.S., ch. 640, § 8, 1983 Tex. Gen. Laws 4079, 4082.

business entity or real property from participating in a vote or decision involving the business entity or real property:

> (a) If a local public official has a substantial interest in a business entity or in real property, the official shall file, before a vote or decision on any matter involving the business entity or the real property, an affidavit stating the nature and extent of the interest and shall abstain from further participation in the matter if:
>
>> (1) in the case of a substantial interest in a business entity the action on the matter will have a special economic effect on the business entity that is distinguishable from the effect on the public; or
>>
>> (2) in the case of a substantial interest in real property, it is reasonably foreseeable that an action on the matter will have a special economic effect on the value of the property, distinguishable from its effect on the public.

TEX. LOC. GOV'T CODE ANN. § 171.004 (Vernon 1999); *see also id.* § 171.002 (defining "substantial interest"). A local public official who knowingly violates these requirements commits a Class A misdemeanor. *See id.* § 171.003; *Walk v. State*, 841 S.W.2d 430 (Tex. App.–Corpus Christi 1992, writ ref'd) (affirming county judge's conviction for knowing participation in a vote to purchase office supplies from his son-in-law's store). Unlike the common-law rule, a violation under chapter 171 "does not render an action of the governing body voidable unless the measure . . . would not have passed the governing body without the vote of the person who violated the chapter." TEX. LOC. GOV'T CODE ANN. § 171.006 (Vernon 1999).

## B.     The Statutes' Relationship

Section 81.002 flatly prohibits county commissioners and judges from having any interest in a county contract whereas chapter 171 permits local governmental bodies, including county commissioners courts, to take actions affecting business entities and real property in which a member of the body has a financial interest. Although no Texas court has addressed the relationship between section 81.002 and chapter 171, this office has harmonized them by reading chapter 171 to authorize a commissioners court to enter into contracts or take actions in which the county judge or a commissioner has a financial interest "to the same extent that other local governmental bodies may take such actions." Tex. Att'y Gen. Op. No. DM-279 (1993) at 4.[3] If the county judge or commissioner has a "substantial interest" in a business entity or real property that will be affected by a vote or decision of the commissioners court, the official must comply with the section 171.004 disclosure requirement and abstain from participating in the matter, if "the action on the matter will have a special economic effect" on the business entity or the value of the real property. TEX. LOC. GOV'T CODE ANN. § 171.004(a)(1)-(2) (Vernon 1999).

---

[3]*See also* Tex. Att'y Gen. Op. Nos. JC-0121 (1999), JC-0100 (1999), JC-0061 (1999).

Significantly, this office has previously concluded that chapter 171 also modifies the section 81.002 oath of office provision with respect to a county judge's or commissioner's financial interest that does not rise to the level of a "substantial interest." Tex. Att'y Gen. Op. No. DM-279 (1993) at 4; *see also* TEX. LOC. GOV'T CODE ANN. § 171.002 (Vernon 1999) (defining "substantial interest"). If a county judge or commissioner has an interest in a business entity that is less than a substantial interest, "the interested member of the commissioners court may participate in an action affecting the business entity. Chapter 171 creates an exception in the oath required by section 81.002 to the extent that it permits a county judge or county commissioner to have a direct or indirect interest in a contract" with the county. Tex. Att'y Gen. Op. No. DM-279 (1993) at 4.[4]

## III.    Analysis

### A.    Whether the Parties may Enter the Lease Agreement

Chapter 171 resolves your first two questions -- whether a commissioners court may lease county-owned real property to a county commissioner and whether a commissioner may lease such property without violating the section 81.002 oath of office provision. *See* Request Letter, *supra* note 1, at 2-3. Chapter 171 governs local public officials' conflicts of interests involving interests in real property. Before a commissioners court votes or decides on any matter involving real property in which a county commissioner has a substantial interest, section 171.004 requires the commissioner to disclose the interest and to abstain from further participation if "it is reasonably foreseeable that an action on the matter will have a special economic effect on the value of the property, distinguishable from its effect on the public." TEX. LOC. GOV'T CODE ANN. § 171.004(a)(2) (Vernon 1999). Under chapter 171, "[a] person has a substantial interest in real property if the interest is an equitable or legal ownership with a fair market value of $2,500 or more." *Id.* § 171.002(b).

In the situation you describe, the commissioner has an interest in real property, but because the commissioner merely leases the property from the county, the interest in the property is not "an equitable or legal ownership"[5] and is therefore not a "substantial interest." *Id.* § 171.002(b).

---

[4]This office has also concluded, however, that chapter 171 does not reach and therefore does not permit certain types of interests, such as a bondsman's interest in a bail bond or an employment contract between a county and a commissioner. Section 81.002 bars county judges and commissioners from having an interest in such contracts. *See, e.g.,* Tex. Att'y Gen. Op. Nos. JC-0121 (1999) at 7 ("Section 81.002 of the Local Government Code, the county judge and commissioners oath of office provision, prohibits a county judge from having an interest in a contract with the county. Because a bail bond is a contract to which the county is a party and in which a surety has an interest, a county judge may not act as a surety on a bail bond in the county. . . . Chapter 171 of the Local Government Code, which regulates conflicts of interest and provides exceptions to the section 81.002 prohibition, does not apply to the taking and approval of bail bonds [because the commissioners court does not vote or decide on bail bonds] and therefore does not provide an exception to section 81.002 in this regard."), JC-0061 (1999) at 3 ("section 81.002 precludes a county commissioner from having an employment relationship with the county. Chapter 171 does not repeal the oath of office provision with respect to employment relationships with the county.").

[5]*See* BLACK'S LAW DICTIONARY 1131 (7th ed. 1999) (defining "ownership" as the "collection of rights allowing one to use and enjoy property, including the right to convey it to others" and stating that "[o]wnership rights are general, permanent, and inheritable"); *see also id.* at 1130-1131 (defining "equitable owner" as one "recognized in equity as the owner . . . because use and title belong to that person, even though legal title may belong to someone else; esp. one for

(continued...)

Because the commissioner's real-property interest does not rise to the level of a "substantial interest," the commissioner is not required to disclose the interest or to abstain from participating in matters affecting that interest. *See id.* § 171.004(a)(2). However, because chapter 171 governs conflicts of interests involving county commissioners' interests in real property, it repeals the common-law prohibition against the commissioners court entering a lease agreement in which a commissioner is interested, *see id.* § 171.007(a), and modifies the section 81.002 oath of office provision, which would otherwise prohibit a county commissioner from having a direct or indirect interest in such a contract, *see* Tex. Att'y Gen. Op. No. DM-279 (1993) at 4 (concluding that chapter 171 also modifies section 81.002 with respect to an interest in a business entity that is less than a substantial interest). Thus, the parties are not prohibited from entering into the lease agreement.

The county commissioner may have other interests arising from the facts you describe that will trigger the chapter 171 requirements if the commissioners court takes an action affecting any of those interests. For example, if the county commissioner owns the twenty-two houses located on the leased property as realty, then he has a substantial interest in them as real property if they have an aggregate fair market value of $2,500 or more, *see* TEX. LOC. GOV'T CODE ANN. § 171.002(b) (Vernon 1999), and he would be required to disclose that interest and abstain from any commissioners court action that would have a special economic effect on their value, *see id.* § 171.004(a)(2). Although you have provided detailed information about the lease agreements, you have not provided any information about the county commissioner's ownership of the twenty-two houses on the county real property. Whether the county commissioner owns the houses as personalty or realty will depend upon the terms of the sale and the intention of the parties[6] and is beyond the scope of this opinion.

In addition, it is not clear from the facts presented in your letter whether commissioners court actions affecting the proposed lease agreement, the real property, or the commissioner's twenty-two houses might also affect a business entity[7] in which the commissioner has a substantial

---

[5](...continued)
whom property is held in trust" and "legal owner" as one "recognized by law as the owner . . ; esp., one who holds legal title to property for the benefit of another"); TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) (words and phrases must be construed according to common usage), (b) (words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, must be construed accordingly).

[6]*See, e.g., Orient Ins. Co. v. Parlin & Orendorff Co.*, 38 S.W. 60, 61 (Tex. Civ. App.–Dallas 1896, writ ref'd) ("Houses are not usually intended to be embraced in the term 'personal property.' They are usually so constructed as to possess, in an eminent degree, the element of permanence in location, and are regarded as partaking of the nature of the land upon which they are built, to such an extent as to become a part and parcel of it. That there are conditions which will prevent a house from becoming a part of the realty upon which it is built, no one will question. It is a well-established principle in the law of fixtures that the intention of the parties largely controls the question whether the building is to be treated as a part of the realty.") (citing *Hutchins v. Masterson*, 46 Tex. 551 (Tex. 1877)); *see also Am. Cent. Ins. Co. v. Wise*, 295 S.W. 1109, 1111 (Tex. Civ. App.–Austin 1927, writ ref'd) ("Where a building owned by one party is upon ground owned by another, and the owner of the building has the privilege of removing it at the termination of his right of possession of the ground on which it is situated, the general rule is that the building is personalty and not realty.").

[7]*See* TEX. LOC. GOV'T CODE ANN. § 171.001(2) (Vernon 1999) (defining "business entity" as "a sole proprietorship, partnership, firm, corporation, holding company, joint-stock company, receivership, trust, or any other entity recognized by law").

interest.[8] If the commissioner has a substantial interest in a business entity and a commissioners court action affecting the lease, the real property, or the twenty-two houses would have a special economic effect on that entity, section 171.004(a)(1) would require the commissioner to disclose his interest in the entity and abstain from participating in the action.

## B.    Whether Attorney General Opinion JM-855 Applies

You also ask about the continued validity of Attorney General Opinion JM-855: "Does Chapter 171 of the Local Government Code supersede or repeal the requirements of [section] 81.002 in regards to the fact situation stated herein in spite of the specific ruling by the Attorney General in Opinion JM-855?" Request Letter, *supra* note 1, at 3. As we have concluded, chapter 171 modifies section 81.002 and permits a county commissioner to have an interest in real property that is affected by an action of the commissioners court, effectively allowing a county commissioner to lease county real property. Attorney General Opinion JM-855 concluded that the section 81.002 oath of office provision prohibited a county commissioner from leasing hangar space at the county airport. *See* Tex. Att'y Gen. Op. No. JM-855 (1988) at 3. That 1988 opinion also concluded that chapter 171 did not specifically authorize a county commissioner to contract with the county and that section 81.002, which is more specific to county judges and commissioners, must control. *See id.* In 1989, however, the legislature amended section 81.002 to add subsection (c),[9] which specifically references chapter 171, reiterating that chapter 171 applies to county judges and commissioners. *See* TEX. LOC. GOV'T CODE ANN. § 81.002(c) (Vernon Supp. 2003) ("Subject to the provisions of Chapter 171, the county judge or a county commissioner may serve as a member of the governing body of or as an officer or director of an entity . . . ."). And since 1989, the prior opinion's construction of the relationship between section 81.002 and chapter 171 has been superseded by subsequent attorney general opinions that harmonize the two provisions by construing chapter 171 to modify section 81.002.[10] Although this office has previously attempted to distinguish Attorney General Opinion JM-855,[11] we conclude that that opinion incorrectly construed chapter 171, and we overrule it.

---

[8]*See id.* § 171.002(a) ("For purposes of this chapter, a person has a substantial interest in a business entity if: (1) the person owns 10 percent or more of the voting stock or shares of the business entity or owns either 10 percent or more or $15,000 or more of the fair market value of the business entity; or (2) funds received by the person from the business entity exceed 10 percent of the person's gross income for the previous year."), (c) (attributing close relative's substantial interest to officer).

[9]*See* Act of May 29, 1989, 71st Leg., R.S., ch. 475, 1989 Tex. Gen. Laws 1647.

[10]*See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0121 (1999), JC-0100 (1999), JC-0061 (1999), DM-279 (1993), JM-1090 (1989).

[11]*See* Tex. Att'y Gen. Op. No. JM-1090 (1989) at 4 (Attorney General Opinion JM-855 (1988) "determined that section 81.002 barred a county commissioner from leasing space from the county to operate a private business. The facts presented in Attorney General Opinion JM-855 indicated that chapter 171 would not apply to the lease transaction in any case. Thus, chapter 171 did not except that proposed transaction from section 81.002. The statements made by Attorney General Opinion JM-855 about the relationship of section 81.002 and chapter 171 of the Local Government Code should be limited to the fact situation addressed by that opinion and not applied to county contracts generally.").

## S U M M A R Y

Chapter 171 of the Local Government Code permits a county commissioner to have an interest in real property that is affected by a commissioners court action. It repeals the common law of conflicts of interest and modifies section 81.002 of the Local Government Code to the extent they prohibit a county commissioner from leasing real property from the county. Attorney General Opinion JM-855 (1988) is overruled.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee